No. 19,428.

FRED MARTINO, ET AL. *v*. CHARLES G. FLEENOR, ET AL.
(365 P. [2d] 247)

Decided October 2, 1961.

Mr. PHILIP J. CABIBI, for plaintiffs in error.

Messrs. PHELPS, FONDA & HAYS, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY

WE will refer to the parties either by name or as they appeared in the trial court where the Fleenors, Bessie Lee Hope Ryan and R. E. Rodgers were plaintiffs and the Martinos were defendants.

The validity of a judgment and decree establishing a private roadway over lands owned by the Martinos is challenged by this writ of error. The defendants assign cross error to that portion of the decree designating the road as a private way, whereas the plaintiffs contend that all of the evidence establishes that the road is a public one.

The facts are not in dispute. The legal conclusions to be drawn therefrom present the heart of the controversy.

The historical background leading to the institution of the suit was that Charles E. Fleenor, the predecessor in title to the plaintiffs, acquired the various parcels now owned by the plaintiffs, commencing about 1910. By 1920 he had accumulated 480 acres in Sections 19, 20, 29 and 30, Township 22 South, Range 66 West of the 6th P.M., in Pueblo County. This entire parcel is referred to as the Fleenor property. In February 1950 Charles Fleenor conveyed a parcel of land in Section 30 to himself and to Bessie Lee Hope Ryan, Lillian M. Saathoff, Kenneth K. Fleenor and Charles G. Fleenor as joint tenants. This land was referred to in the testimony as "Parcel A." Rogers acquired his interest in that parcel from Lillian M. Saathoff. On the same date a parcel of land in Sections 19, 20 and 29, referred to as "Parcel B," was conveyed by Charles E. Fleenor to himself and Rachael Fleenor as joint tenants.

After Charles E. Fleenor's death, Rachael conveyed "Parcel B" to Elvin J. Huey, Jr., who, in turn, conveyed to one of the defendants, John F. Martino, in 1955.

From 1910 to 1956, Charles E. Fleenor, his family and friends, owners of the land immediately south of the Fleenor's property, members of the public who hunted

in the vicinity, and any one else having occasion to get to the Fleenor property, used a road called the "section line road" which connects with the Beulah Highway, officially designated as Highway 76. This road divides Sections 17 and 18 from the state highway to the south line of the section; thence easterly between Sections 17 and 20 approximately a quarter of a mile, and thence south through Section 20 to "Parcel B." In 1956 the Martinos constructed a barricade across the roadway through "Parcel B" which they acquired, thus denying the plaintiffs access to "Parcel A."

The evidence is, and the court so found, that from 1914 the section line road was and is a well-defined roadway, easily identifiable. At one time it was fenced on both sides, and, although some of the fence posts are now broken and decayed, most of the fence lines are clearly visible, easily discernible, and certain portions of the fence are still in good condition and repair. It was established that in 1930 the county of Pueblo did some maintenance work and that the WPA expended public funds to install certain culverts and maintain the roadway under the direction of Pueblo County. No one ever interferred with the use of this road until the Martinos fenced it off. There was no other access to "Parcel A" except through "Parcel B," and from the time the Fleenors split the property into the two parcels, keeping "Parcel B" for themselves, the use of the roadway across "Parcel B" was never interfered with until the Martinos acquired it.

The witnesses were agreed, and the Martinos admitted in their brief, that the section line road was used without objection on the part of the defendants for a period of approximately forty-two years. On this point the Martinos assert that because it was without objection it was with their consent, and that, a priori, that to which they consented they could withhold at any time.

There is no testimony that any one sought or obtained or was given consent to the use of the roadway. All of the witnesses testified that they used the road because

they "thought it was a public way"; "because it was a well-defined roadway to the ranch," and "because they had a right to use it." No one ever told them they could or couldn't use the road.

The rule upholding, therefore, plaintiff's acquisition of the right of way over the road by open, notorious and adverse use for the period of forty-two years is well set out in the following language from *Trueblood v. Pierce,* 116 Colo. 221, 179 P. (2d) 671:

"Plaintiffs and their predecessors in title have been in possession of the easement for more than eighteen years; there is, as a result thereof, a *presumption that their holding was adverse.* (citing cases); consequently, it was incumbent upon defendants to overcome this presumption, and this they did not attempt to do. The presumption being that plaintiffs' possession was adverse, the uncontradicted evidence is that plaintiffs and their predecessors in title were in open, notorious and visible use and occupation of the easement under a claimed right thereto for more than eighteen years, and as a result thereof fully established their right to the easement by prescription." (Emphasis supplied.)

The second contention of the Martinos is that because Fleenor owned "Parcel B" and "Parcel A" together up until 1950 when by conveyance he split the property, he could not, during the period 1910 to 1950, create an easement in his favor on his own property since a person cannot claim adversely to himself. The court in its conclusions of law held — and we believe it to be the correct rule — that when Fleenor split his property, thus placing "Parcel B" between "Parcel A" and the section line road, and thence to the highway, he created by implication a way of necessity over "Parcel B" to "Parcel A" in order to give the owners of that parcel ingress and egress to the section line road and thence to the highway. The rule supporting this conclusion is set forth in Volume 17a Am. Jur. 668, Easements, §58, as follows:

"Although a way of necessity is sometimes confused

with an easement arising, on severance of title, from a pre-existing use, there is a definite distinction between them, mainly because a way of necessity does not rest on a pre-existing use but on a need for a way across the granted or reserved premises. A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessity for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. Thus, the legal basis of a way of necessity is the presumption of a grant arising from the circumstances of the case. This presumption of a grant, however, is one of fact, and whether a grant should be implied depends upon the terms of the deed and the facts in each particular case.

"A way of necessity arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. *It is a universally established principle that where a tract of land is conveyed which is separated from the highway or by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway.* In other words, if one grants a piece of land in the midst of his own, he thereby impliedly grants a way to reach it. Conversely, if one conveys a part of his land in such form as to deprive himself of access to the remainder unless he goes across the land sold, he has a way of necessity over the portion conveyed." (Emphasis supplied.)

The evidence is clear that Fleenor for five years, and

then Huey and even Martino for almost a year, recognized the implied grant of a roadway through "Parcel B" to provide access to "Parcel A."

Turning to the question of whether the evidence establishes that the road is a public highway, plaintiffs contend that C.R.S. '53, 120-1-1, controls the situation here. It reads as follows:

"The following are hereby declared to be public highways:

\* \* \*

" (3) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years."

It is contended that the following findings by the trial court bring the facts of this case squarely under the statute. Those findings, supported by the evidence, are:

"The section line road has never been dedicated to the public but has been used by the Fleenors, their relatives, friends and employees, the Lessees, and occasionally by owners of land south of Parcel A and B, since the construction of the Beulah Highway in 1914; said road has been so used adversely without any interruption or objection on the part of the Defendants Martinos or their predecessors in interest for more than forty-two years until the latter part of 1956 when Defendants Martinos built a fence across the road and informed the Plaintiffs that they could no longer use it."

Standing alone, these findings might support the conclusions of the plaintiffs. However, the court also found — and we believe it to be controlling — that for the many years involved there has been in place across the section line road between the Fleenor property and the Beulah Highway at least three wire gates, and that these were and are so maintained that persons traversing the same are obliged to open and close the gates to pass along the way. The court concluded that if a "landowner obstructs free travel by means of gates or fences

it ordinarily prevents the public from acquiring a highway by prescription. It is believed this is applicable to the present situation. The fact that Pueblo County and the WPA on some occasions did maintenance work, is not sufficient to make the section-line road a public highway."

The trial court was correct in its resolution of all issues before it. Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE McWILLIAMS concur.