GILPIN INVESTMENT CO., a Colorado
corporation, Plaintiff-Appellant and
Cross-Appellee,

v.

Ruth M. BLAKE, Defendant-Appellee
and Cross-Appellant.

No. 83CA0837.

Colorado Court of Appeals,
Div. II.

June 13, 1985.

Rehearing Denied Nov. 7, 1985.

Certiorari Denied (Gilpin) Jan. 21, 1986.

Elias J. Candell, Lakewood, for plaintiff-appellant and cross-appellee.

Albert B. Dawkins, Denver, for defendant-appellee and cross-appellant.

SMITH, Judge.

In this quiet title action, plaintiff, Gilpin Investment Company (Gilpin), appeals a judgment of the trial court decreeing the existence of a public road across its property, and decreeing that defendant, Ruth Blake, was entitled to a private way of necessity or easement across its property for a television antenna cable and an associated service path. The decree is affirmed in part, reversed in part, and the cause is remanded with directions.

Gilpin and Blake own adjacent parcels of property in Blackhawk, Colorado. Blake acquired her property, the "After Supper Lode" and the "Banzai tracts" by quitclaim deed from the City of Blackhawk in 1961. In 1977, Gilpin acquired, by quitclaim deed from the City of Blackhawk, the "Great Downs tract," also known as the "Great Downs Lode mining claim."

Gilpin's property is located to the west of Blake's property. The access road in question runs in a southerly direction from Horn Street, a public street, and diagonally runs across both Gilpin's and Blake's property. It dead ends as a turn-around on Blake's After Supper Lode. The undisputed evidence established that the road and the turn-around provided the only access to Blake's property. Gilpin admitted that the road had been used continuously since at least 1918.

The undisputed evidence also discloses that a television antenna was originally erected by Blake in 1958 on the Banzai tract which was then owned by the City of Blackhawk but which was subsequently acquired by Blake in 1961. The cable runs from the top of the antenna across Blake's Banzai tract and the After Supper Lode and Gilpin's Great Downs tract to Blake's home as well as to several neighboring residences. A service path for maintenance of the cable follows the route of the cable, over rugged terrain, across both Blake's and Gilpin's property. Testimony also indicated that the service path and cable were placed in the only feasible location on the mountain and that it would be cost prohibitive to move either.

Five years after acquiring the Great Downs tract, in May 1982, Gilpin commenced suit to quiet title. Blake claimed an entitlement to a road easement for access to her property and for easements for the television antenna cable and the service path. She based her claims, in part, on the theory that these are ways of necessity. The trial court quieted title in the Great Downs tract to Gilpin subject to a public road under § 43–2–201(1)(c), C.R.S. (1984 Repl.Vol. 17) and to implied easements of necessity for the antenna cable and service path. Gilpin appeals.

## I. *The Access Road*

Gilpin concedes that Blake has established the elements to acquire a private easement of necessity for access over the Great Downs tract because it is the only possible route to and from her property, the After Supper Lode, and cites *Martino v. Fleenor*, 148 Colo. 136, 365 P.2d 247 (1961) in support thereof. Thus, the issue is not Blake's entitlement, but rather is whether the road is a public road or a private road.

Gilpin contends that the City of Blackhawk has been the fee owner of the Great Downs tract, as opposed to the Great Downs Lode mining claim, since 1874 and

has continued to be the fee owner of the tract until it conveyed both the tract and mining claim to Gilpin on September 15, 1977, by quitclaim deed. Gilpin argues that the recorded documents in the chain of title to the Great Downs tract actually evidence two chains of title, one running as to the tract surface and one running as to the mining claim. And, noting the principle that one cannot adversely possess against a governmental entity, Gilpin concludes that neither Blake nor the public could establish, under § 43–2–201(1)(c), C.R.S. (1984 Repl.Vol. 17) adverse possession for a road because of the City's ownership of the surface. We agree with Gilpin.

In rejecting Gilpin's argument, the trial court found that although Gilpin owned the Great Downs tract, it was subject to a public road under § 43–2–201(1)(c), C.R.S. (1984 Repl.Vol. 17). The court specifically found:

"That the Great Downs Tract, also known as Great Downs Lode Mining Claim, was privately owned and not public property from February 1894 to October 23, 1939, as to an undivided one half, and to September 28, 1971, as to the other undivided one-half. That as to the road that the road was over private land from 1918 to 1939, and that it was used adversely to the owner or owners thereof for twenty consecutive years."

In arriving at its conclusion that the property had been privately owned for the requisite twenty years, the trial court traced Gilpin's "chain of title" which consisted of several documents commencing with an 1874 townsite patent from the United States to the City of Blackhawk and concluding with a September 15, 1977, quitclaim deed from the City conveying its interest in the "Great Downs tract also known as the Great Downs Lode Mining Claim" to Gilpin. Among the documents included in the chain of title was a mining claim to the Great Downs Lode mining claim recorded in 1889 by Nicholas and Joseph Moyle. Tax deeds relative to the undivided interests in the mining claim were issued to the City in 1939 and to

Gilpin County in 1971. The mining interests under the tax deeds were conveyed by the county to the city prior to 1977.

In support of its conclusion, the trial court gave particular credence to a reference made in two recorded mining deeds. These deeds which were recorded in 1921, purported to convey Nicholas Moyle's undivided one-half interest in the *mining claim*. The reference which was included in the two mining deeds reads as follows:

"Being the same mining claims the surface lands to which were sold and conveyed to Joseph Moyle and Nicholas Moyle by the said City of Blackhawk in February, A.D., 1894."

We hold that the trial court erred in its interpretation of the effect of the reference in these deeds as conveying title to private ownership.

■ Where there is a question regarding the interpretation of a deed or written document, the terms thereof raise issues of law, and the trial court's findings are not binding on review. *See Alley v. McMath,* 140 Colo. 600, 346 P.2d 304 (1959); *Board of County Commissioners v. Anderson,* 34 Colo.App. 37, 525 P.2d 478 (1974), *aff'd sub nom., Anderson v. Union Pacific R.R.,* 188 Colo. 337, 534 P.2d 1201, (1975). We conclude after reviewing the pertinent recorded documents in the record and the applicable recording statutes, that title to the Great Downs tract, as opposed to the Great Downs Lode mining claim, was at all relevant times held by the City of Blackhawk.

■ The filing of the mining claim in 1889, fifteen years after issuance of the township patent, by the Moyle brothers did not purport to affect the surface of the tract, and we have no record that the Moyles ever attempted to purchase an interest in the property under the provisions of the townsite patent, nor is there any evidence of any attempt on the part of anyone to patent the claim pursuant to the federal mining laws. Therefore, we conclude that, at the very most, all the Moyles and their successors could have acquired

was a right to remove minerals from the City-owned property.

In 1921, Nicholas Moyle's *undivided one-half interest in the mining claim* was conveyed in a "Mining Deed Record" to "John Dennis" who recorded the document and thereafter conveyed it to "R.G. Griffith" who also had a "Mining Deed Record" recorded. Both "deeds" included the previously noted reference that the surface had been previously conveyed and sold to the Moyle brothers in 1894; however, the record does not reveal any other evidence of the existence or recording of any such conveyance. The mere reference to the existence of such a conveyance does not require us to accept the fact of its execution. It was these mining interests which were later sold for taxes and which ultimately were reconveyed to the City.

Section 38–35–107, C.R.S. (1982 Repl.Vol. 16a) provides that recitals in written instruments affecting title to real property which have remained of record for at least twenty years shall be received as "prima facie evidence of the facts recited therein." The last sentence of this section provides, however, that "this section shall not apply to the recitals, exceptions, and reservations described in § 38–35–108."

Section 38–35–108, C.R.S. (1982 Repl.Vol. 16a) provides:

"When a deed or any other instrument in writing affecting title to real property has been recorded and such deed or other instrument contains *a recitation of or reference to some other instrument purporting* to affect title to said real property, *such recitation or reference shall bind only the parties to the instrument and shall not be notice to any other person whatsoever unless the instrument mentioned or referred to in the recital is of record in the county where the property is situated. Unless the same is so recorded, no person other than the parties to the instrument shall be required to make any inquiry or investigation concerning such recitation or reference.* All such recitations or references contained in deeds or instruments recorded prior to March 28, 1927, shall, after the expiration of one year from March 28, 1927, cease to be notice unless the instrument referred to in said reservation, exception, or reference is actually recorded within said one year period." (emphasis added)

▪ Here, the trial court erred in not considering § 38–35–108, C.R.S., since the reference to the 1894 conveyance of the surface in the 1921 instruments which purportedly conveyed Nicholas Moyle's undivided one-half interest in the mining claim, would only be binding on the parties to the 1921 instruments, *i.e.*, Nicholas Moyle's heirs, John Dennis and R.G. Griffith. Section 38–35–108, C.R.S., narrows the general rule that a purchaser is bound by recitals in conveyances or other instruments of transfer in the chain of title. *See Page v. Fees-Krey, Inc.*, 617 P.2d 1188 (Colo.1980). Moreover, since the purported 1894 conveyance was never recorded, it does not constitute notice of any such conveyance.

▪ Therefore, the mere reference to the surface conveyance without a recorded document confirming such does not amount to a valid conveyance of title to private individuals as Blake argues and as the court found. We therefore ignore the reference and conclude that title, at least as to the surface of the Great Downs tract, remained with the City from the time it had obtained title under the townsite patent. Since the City retained title to the surface of the Great Downs tract, Blake's claim necessarily fails because a public road pursuant to § 43–2–201(1)(c), C.R.S. (1984 Repl.Vol. 17) may only be established by showing twenty years of continuous use over "private lands." Since the City is not a private entity, a public road cannot be asserted against it, nor can Blake establish adverse possession against the government. *United States v. Osterlund*, 505 F.Supp. 165 (D.Colo.1981), *aff'd*, 671 F.2d 1267 (10th.Cir.1982). *Omaha & Grant Smelting & Refining Co. v. Tabor*, 13 Colo. 41, 21 P. 925 (1889).

■ Our conclusion, however, does not preclude Blake from gaining access to her property. The evidence established that the road originally crossed property owned by the City, that the property was subsequently divided and conveyed to plaintiff and Blake, and that it was the only practical means of access to Blake's property. In addition, Gilpin concedes Blake is entitled to such access pursuant to the holding in *Martino v. Fleenor, supra.* Therefore, although Blake is not entitled to have a public road decreed, she is entitled to an easement or private way of necessity over plaintiff's property.

## II. *Television Cable and Service Path*

Gilpin next argues that Blake has no right to an easement across its property for the television cable and its related maintenance path in that this would amount to an unconstitutional taking of Gilpin's property. We disagree.

■ Plaintiff raises the constitutional taking issue for the first time on appeal. It did not ask the trial court to consider it, nor is it mentioned in the notice of appeal. We will therefore not consider it on review. C.R.C.P. (f). *Cf. Board of County Commissioners v. Blanning,* 29 Colo.App. 61, 479 P.2d 404 (1970).

The evidence indicates that Blake had obtained permission to install the television antenna and cable from the Blackhawk City Council. Testimony also indicated that the service path and cables were placed on the only feasible locations on the mountain and that it would be cost prohibitive to move or replace either. The cable and service path were in place when Gilpin purchased its property. Based on the evidence, the trial court found that Blake had acquired implied easements of necessity for the television antenna cable and the service path.

■ We are not aware of any case which has specifically allowed an "implied easement of necessity" for a television cable. However, the facts support the conclusion that the cable and path should remain.

The circumstances here are tantamount to a license coupled with an interest. The city council's grant of permission and acquiescence in Blake's erecting the antenna and cable on the only feasible location on the mountain amount to a grant of an easement which takes on the qualities of a right in the land itself. *See Western Union Telegraph Co. v. Pennsylvania Co.,* 129 F. 849 (3rd Cir.1904); *see generally* 25 Am. Jur.2d *Easements & Licenses,* § 129 (1966 & 1984 Cum.Supp.). Thus, based on the general rule that the purchaser of real property takes title subject to any open, visible, continuous, and permanent easement, *see Upper Eagle Valley Sanitation District v. Carnie,* 634 P.2d 1008 (Colo. App.1981), Gilpin acquired the Great Downs tract subject to a continuing "easement" for the television cable and associated service path.

The judgment is reversed insofar as the trial court ruled that the access road was a public road, but is affirmed as to the establishment of easements for the television cable and associated service path. The cause is remanded for entry of a new decree in accordance herewith.

KELLY and STERNBERG, JJ., concur.