Curtis L. BROWN, in his capacity as Trustee for the Heritage Ministries, Plaintiff–Appellant and Cross–Appellee,

v.

Martille FAATZ, as Trustee of the Martille Shawcroft Trust, and Brett Shawcroft, as Trustee of the Oscar Shawcroft Trust B, Defendants–Appellees and Cross–Appellants.

No. 06CA2121.

Colorado Court of Appeals, Div. VI.

Oct. 2, 2008.

Rehearing Denied Nov. 6, 2008.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, James Birch, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Hamilton, Faatz & Waller, PC, Clyde A. Faatz, Jr., Christopher J.W. Forrest, Robin L. Nolan, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge J. JONES.

This case concerns primarily whether one property owner has a private prescriptive easement over others' property and, if so, the scope of that easement. Defendants, Martille Faatz, as trustee of the Martille Shawcroft Trust, and Brett L. Shawcroft, as trustee of the Oscar Shawcroft Trust B (collectively, the Shawcrofts), challenge the trial court's judgment finding that plaintiff, Curtis L. Brown, in his capacity as trustee for the Heritage Ministries, has a prescriptive easement over their land. Brown challenges the trial court's judgment limiting the scope of the prescriptive easement.

In addition, the parties challenge certain of the trial court's findings and conclusions concerning the Shawcrofts' counterclaim against Brown for his alleged violation of section 38–35–109, C.R.S.2008 (which concerns the recording of instruments in writing conveying, encumbering, or affecting title to real property), and their requests for attorney fees under that statute, C.R.C.P. 11, and section 13–17–102, C.R.S.2008. Brown appeals the trial court's judgment finding that he violated the recording statute. The Shawcrofts appeal the amount of attorney fees the trial court awarded them under the recording statute and the trial court's order denying their motions for attorney fees under C.R.C.P. 11 and section 13–17–102.

We conclude that the trial court misapprehended critical aspects of the law applicable to Brown's easement claim, and that the case must be remanded to the trial court for additional findings under the governing legal principles as to the existence of a prescriptive easement over the Shawcrofts' property. We further conclude that the trial court misconstrued the recording statute, and that Brown is entitled to judgment on the Shawcrofts' counterclaim. As a result, the award of damages and attorney fees to the Shawcrofts under the statute cannot stand. Finally, we conclude that the trial court did not err in denying the Shawcrofts' motions for attorney fees under C.R.C.P. 11 and section 13–17–102. Accordingly, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

## I. Background

The following historical facts are taken from the trial court's written findings of facts and conclusions of law following the trial to the court. Additional procedural facts are taken from other court orders and the parties' pleadings and motions.

In his capacity as trustee of Heritage Ministries, Brown owns 160 acres of land, known as the Ortega Ranch, in Conejos County. The Shawcrofts own 320 acres of land, known as the Tipton Ranch, southeast of the Ortega Ranch. Federal Bureau of Land Management and United States Forest Service land completely surrounds the Ortega Ranch and separates the two properties.

No public road provides access to the Ortega Ranch. However, a public road, Forest Service 250 (FS 250), runs through the southern part of the Tipton Ranch. Branching off from FS 250 is a two-track dirt road (the Tipton two-track), which runs northwest through the Tipton Ranch, cuts through the BLM and Forest Service land, and proceeds to the Ortega Ranch. Another road, referred to by the parties as the Ortega Road, provides access to the Ortega Ranch over BLM and Forest Service property, though there is some question whether Brown has a right to use that road. This case concerns Brown's claim of access over the Tipton two-track on the Tipton Ranch.

Dario Ortega purchased the Ortega Ranch in 1920. According to Dario Ortega's son, Felix Ortega, who grew up on the property, the Ortegas regularly used the Tipton two-track as their primary means of access to the Ortega Ranch from at least 1937, when Felix was six years old.

For as long as anyone could remember, a gate has been located across the Tipton two-track where it intersects FS 250. Until 1951, when brothers Warren C. and Oscar B. Shawcroft acquired the Tipton Ranch, the gate remained unlocked. The Shawcroft brothers began locking the gate regularly in 1951, though it sometimes remained unlocked. Initially, they provided the Ortegas with a key, but in 1967 (by which time Felix Ortega's parents had moved to Monte Vista), they changed the lock on the gate, did not give Felix a key, and told Felix that he would have to ask permission each time he wished to use the Tipton two-track.

In 1996, when Felix was attempting to sell the Ortega Ranch, he asked the Shawcrofts to sign documents acknowledging reciprocal easements for use of the Tipton two-track. They declined. Felix sold the Ortega Ranch to Bruce Steffens, who sold it to Brown a few months later. In connection with the sale of the Ortega Ranch to Brown, Felix and Steffens gave Brown sworn affidavits and maps describing their historical use of the Tipton two-track, which Brown recorded in the real property records of Conejos County in 2003. On several occasions, Brown asked the Shawcrofts to sign documents granting him an easement over the Tipton two-track. They declined all such requests.

In 2004, after a dispute arose between the parties concerning Brown's proposed use of the Ortega Ranch, Brown brought suit under C.R.C.P. 105 for a decree that a prescriptive easement and an easement by necessity exist over the Tipton two-track for access to the Ortega Ranch. The Shawcrofts asserted a counterclaim against Brown, claiming that he violated section 38–35–109(3), C.R.S.2008, by recording Felix Ortega's and Steffens's affidavits, which the Shawcrofts alleged contained false statements. The court subsequently permitted Brown to withdraw his easement by necessity claim without prejudice.

Following a bench trial, the court found that Brown had established the existence of a prescriptive easement over the Tipton two-track through the Ortegas' use of that road from 1937 to 1955, but that thereafter the Shawcrofts "re-adversely possessed" a portion of the easement. The court ruled that Brown has an easement for occasional ingress and egress and for recreational, but not residential, purposes. The court also found that Brown had violated section 38–35–109(3) by recording the affidavits, and, pursuant to the statute, awarded the Shawcrofts damages of $1,000 and $23,575 in attorney fees. In a subsequent order, the court denied the Shawcrofts' motions for attorney fees under C.R.C.P. 11 and section 13–17–102. As noted, all parties appeal.

## II. Private Prescriptive Easement

■ We first address the Shawcrofts' contention on cross-appeal that the trial court erred in finding that Brown has a prescriptive easement over the Tipton two-track.

■ An easement by prescription is acquired when the prescriptive use is open or notorious, continuous without effective interruption for at least eighteen years, and either adverse or pursuant to an attempted but ineffective grant. *Matoush v. Lovingood,* 177 P.3d 1262, 1270 (Colo.2008); *Lobato v. Taylor,* 71 P.3d 938, 950 (Colo.2002); *Clinger v. Hartshorn,* 89 P.3d 462, 466 (Colo.App. 2003); *see* § 38–41–101, C.R.S.2008.

■ The parties' dispute in this case is whether the Ortegas' use of the Tipton two-track was adverse during any, or all, of the requisite eighteen-year period. As the party claiming the easement, Brown bore the burden of proving by a preponderance of evidence continuous, uninterrupted, adverse use of the easement for the statutory period of eighteen years. *See Proper v. Greager,* 827 P.2d 591, 595 (Colo.App.1992). Permissive use during any or all of that period defeats a claim of adverse use, and therefore precludes the acquisition of the prescriptive easement. *Jesmer v. Hodge,* 471 P.2d 645, 646 (Colo. App.1970) (not published pursuant to C.A.R. 35(f) ); *see McKenzie v. Pope,* 33 P.3d 1277, 1279–80 (Colo.App.2001); *Miller v. Bell,* 764 P.2d 389, 390 (Colo.App.1988).

The trial court found that beginning in 1937, the Ortegas adversely used the Tipton two-track, and did so openly and continuously for at least eighteen years. In rejecting the Shawcrofts' argument that the Ortegas' use was permissive, the trial court applied a legal presumption that the Ortegas' unexplained, continuous, and open use of the road for eighteen years was adverse, and found

> there is no evidence that the Ortegas ... thought it desirable or necessary to obtain such permission. Even after [the Shawcroft brothers] purchased the property and started locking the gate at times, they provided a key to the Ortegas. While the Ortegas lived on the [Ortega Ranch], they used the Tipton two-track as if it were

their right to do so and no one interfered with that use.

> . . .

> [T]he weight of [Felix] Ortega's testimony is that neither he nor his parents ever requested any sort of permission, that they used the Tipton two-track as a matter of right and that none of the Tipton Ranch owners ever did anything to deny them the right to use the road.

■ "On review, we will not disturb a trial court's determination concerning the existence of a prescriptive easement if the court based its factual findings on competent evidence in the record." *Trask v. Nozisko,* 134 P.3d 544, 550 (Colo.App.2006). However, we review the trial court's legal conclusions de novo, and we may reverse a trial court's decision where it is based on an incorrect apprehension or application of the law. *See Matoush,* 177 P.3d at 1269; *Welsch v. Smith,* 113 P.3d 1284, 1287 (Colo.App.2005); *Turnbaugh v. Chapman,* 68 P.3d 570, 572–73 (Colo.App.2003).

Initially, the Shawcrofts contend the trial court erred because the evidence at trial established that the Ortegas' use of the Tipton two-track was permissive from the outset. More specifically, they contend (1) evidence was introduced which showed the Ortegas understood they had been given permission to use the road, by means of either express permission or the "neighborly attitude" of the Shawcrofts' predecessors, and (2) the presence of the gate at the intersection of the Tipton two-track and FS250 created a presumption that the Ortegas' use was permissive, which Brown did not overcome with competent evidence.

■ We are not persuaded by the Shawcrofts' contention that the Ortegas received express permission to use the road or that such permission was inferred by the Tipton Ranch owners' neighborly attitude because the trial court's findings rejecting that contention are supported by competent evidence. The Shawcrofts essentially ask us to weigh the conflicting evidence and draw inferences contrary to those drawn by the trial court. That is not our role.

The Shawcrofts' contention based on the existence of the gate, however, has merit. The use of a roadway for the statutory period, if unexplained, is presumed to be under a claim or assertion of right, and therefore adverse. *Allen v. First Nat'l Bank of Arvada,* 120 Colo. 275, 284, 208 P.2d 935, 940 (1949); *Trueblood v. Pierce,* 116 Colo. 221, 233, 179 P.2d 671, 677 (1947); *see Matoush,* 177 P.3d at 1270. Ordinarily, however, the use of a road is not deemed adverse where free travel along the road is obstructed by a gate, even if the gate is not locked. *Lang v. Jones,* 191 Colo. 313, 315, 552 P.2d 497, 499 (1976); *Martino v. Fleenor,* 148 Colo. 136, 141–42, 365 P.2d 247, 250 (1961); *People ex rel. Mayer v. San Luis Valley Land & Cattle Co.,* 90 Colo. 23, 26, 5 P.2d 873, 875 (1931); *see McIntyre v. Bd. of County Comm'rs,* 86 P.3d 402, 412 (Colo.2004) ("By constructing a gate across a road, a landowner conveys the clear message that any public use of that road is with the landowner's permission only; and the public's use is not adverse.").

The existence of a gate, however, does not necessarily establish that use was permissive in all cases. In *Bd. of County Comm'rs v. Flickinger,* 687 P.2d 975, 981 (Colo.1984), the court held that the placement of a gate does not conclusively establish the character of the public use as permissive because a gate "may be erected for purposes other than obstruction of public travel." In upholding the trial court's ruling that the public's use of the road was adverse, the court relied on evidence that the gate was primarily for the benefit of a rancher who had been using the property as pasture for his livestock. *Id.; see McIntyre,* 86 P.3d at 413 (recognizing that evidence as the basis for the court's holding in *Flickinger* ); *see also* Restatement (Third) of the Law of Property: Servitudes § 2.16 cmt. g (2000) (while a gate may create an inference of permissive use, it does necessarily overcome a presumption of adverse use because it may have been intended to keep out hunters and strangers).

Here, the trial court erred in concluding that the Ortegas' failure to seek permission to use the road and lack of belief they needed such permission established that permission was not given. An owner of land may give permission to use a road in a variety of ways. *See, e.g., Welsch,* 113 P.3d at 1287 (verbal permission); *Jesmer,* 471 P.2d at 646 (permission by agreement). As discussed above, permissive use may be shown by evidence of the presence of a gate across the road on the owner's property. When a landowner gives another person permission to use a road, whether the other person believes he needs such permission or not is immaterial in determining whether the other's use is permissive when the permission is given. By granting permission, the owner has exercised dominion over the property in a way which necessarily renders the other's use of the road permissive rather than adverse.

Brown contends, however, that the existence of a gate is irrelevant in this case because the Colorado cases relying on such evidence concern claims for public roadways, not private prescriptive easements. Though the trial court agreed with Brown's argument, we conclude that the law is to the contrary.

In *McIntyre,* 86 P.3d 402, the supreme court compared and contrasted the elements of a claim of a public prescriptive road under section 43–2–201, C.R.S.2008, and those of a claim of a private prescriptive easement. With the exception of an element not at issue here, the court observed that, "in general, the requirements for a public prescriptive easement are the same as those for a private easement. . . ." *Id.* at 407 (citing Restatement (Third) of the Law of Property: Servitudes § 2.18 cmt. f). We perceive no logical reason why the principles of permissive use should be construed differently depending on whether the prescriptive easement sought is for the benefit of the public at large or of a single landowner or group of landowners, and we observe that courts in other jurisdictions have relied on evidence of the existence of a gate to show permissive use in the context of private prescriptive easement claims. *See, e.g., Tomlin Enterprises, Inc. v. Althoff,* 325 Mont. 99, 103 P.3d 1069, 1072–73 (2004); *cf. Fischer v. Berger,* 710 N.W.2d 886, 889 (N.D.2006) (gates across trail strongly indicated that use was permissive).

Treating such evidence as strongly indicative of permissive use comports with Colorado's policy of favoring the record owner where rights are claimed by adverse possession. *See Lovejoy v. School Dist. No. 46 of Sedgwick County*, 129 Colo. 306, 311–12, 269 P.2d 1067, 1070 (1954) ("Every reasonable presumption is made in favor of the true owner against adverse possession."); *Trask*, 134 P.3d at 552.

The trial court construed *Martino*, 148 Colo. 136, 365 P.2d 247, as distinguishing between claims of public and private prescriptive easements in this respect because the court in that case mentioned the presence of gates only in its discussion of the public road claim. There is no indication in that decision, however, that the party opposing the easement claims argued that the presence of gates bore on the private prescriptive easement claim. Moreover, the decision indicates that the supreme court addressed the effect of the gates on the public road claim because the trial court had explicitly relied on the presence of gates in rejecting the public road claim. *Id.* at 141–42, 365 P.2d at 250.

Therefore, we conclude that the trial court applied an erroneous legal test to the Shawcrofts' contention that the Ortegas' use of the Tipton two-track was permissive. The evidence here, on the one hand, is that a gate has existed across the road since before 1937. There was also evidence that the Shawcroft brothers locked the gate in 1951 and gave Felix Ortega a key, acts which could be construed as giving Felix Ortega permission to use the Tipton two-track. *See Walter v. Hall*, 940 P.2d 991, 995 (Colo.App.1996) (fact owner locked gate across road supported directed verdict in owner's favor on adjacent landowner's claim of a public road), *aff'd*, 969 P.2d 224 (Colo.1998); *Tomlin Enterprises*, 103 P.3d at 1072–73; *Critchlow v. Critchlow*, 532 P.2d 216, 217 (Utah 1975); *Millard v. Granger*, 46 Wash.2d 163, 279 P.2d 438, 438–39 (1955). The facts that the Shawcroft brothers asked Felix Ortega to return the key to them in 1967, changed the lock without giving Felix a key, and told him he would have to ask for permission each time he wished to use the road could also support the

conclusion that the Shawcroft brothers had given the Ortegas permission to use the road in 1951.

On the other hand, there was evidence that the gate existed to constrain cattle, and that the Shawcroft brothers locked the gate for the same reason. And, under the circumstances, the Shawcroft brothers' acts of locking the gate and giving the Ortegas a key could be construed as ambiguous: the Shawcroft brothers could have been acknowledging the Ortegas' right to use the Tipton two-track. *See Crane v. Crane*, 683 P.2d 1062, 1065 (Utah 1984); Restatement (Third) of the Law of Property: Servitudes § 2.16 cmt. g.

The evidence therefore presents factual questions as to whether the Ortegas' use of the Tipton two-track was permissive from the outset and, if not, whether their adverse use was interrupted by permission in 1951. Though the trial court resolved the factual issue of permission, it did so by applying an incorrect view of the law. Therefore, the appropriate course of action is to vacate the trial court's judgment declaring that Brown has a prescriptive easement and remand for further findings on that claim. *See Trask*, 134 P.3d at 555; *McKenzie*, 33 P.3d at 1280.

In light of our decision to remand for further findings on the issue of permissive use, we decline to address the parties' remaining contentions concerning the existence and scope of the alleged easement at this time. Those contentions may be raised by the parties in the event of any appeal from the trial court's judgment on remand.

### III. Violation of Section 38–35–109

 Next, we turn to Brown's contention that the trial court erred in finding that he violated section 38–35–109(3). We agree with Brown that the trial court erroneously construed the statute.

Section 38–35–109 provides in relevant part:

(1) All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of

courts of record may be recorded in the office of the county clerk and recorder of the county where such real property is situated; ...

...

(3) Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to convey, encumber, create a lien against, or otherwise affect the title to real property, knowing or having a reason to know that such document is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees. . . .

At trial, the Shawcrofts argued that Brown violated section 38–35–109(3) when he recorded the affidavits of Felix Ortega and Steffens, because those affidavits allegedly contained material misstatements, such as the statement that their access to the Tipton two-track had never been limited in any way. The Shawcrofts also asserted that portions of the affidavits were forged.

The trial court found that Brown "had no reason to know that the affidavits contained material misstatements," and that the evidence did not support a finding that any portion of the affidavits was forged. However, the trial court also found that Brown had "unjustifiably clouded" the Shawcrofts' title because the affidavits "put potential purchasers of the Tipton Ranch on notice that non-owners of the Tipton Ranch were claiming a right of access across a portion of the ranch," and that until a court entered a judgment declaring that a prescriptive easement existed "there is no justification for filing a document making such a claim in the real estate records." The trial court also found that the affidavits were groundless because they effectively encumbered the entire 320 acres owned by the Shawcrofts, "not just the 80 acres the two-track crossed."

■■■ We review de novo a trial court's construction of a statute. *Turkey Creek Ltd. Liability Co. v. Anglo America Consol. Corp.*, 43 P.3d 701, 704 (Colo.App.2001). In

doing so, our task is to give effect to the intent of the General Assembly. *Premier Farm Credit, PCA v. W–Cattle, LLC*, 155 P.3d 504, 513 (Colo.App.2006). To determine that intent, we first look to the language of the statute and construe it according to its plain and ordinary meaning. *Id.; Turkey Creek*, 43 P.3d at 704. "When the statutory language is clear and unambiguous, there is no need to apply rules of statutory construction, because it may be presumed that the General Assembly meant what it clearly said." *Turkey Creek*, 43 P.3d at 704. "In addition, we must construe the statute as a whole to give consistent, harmonious, and sensible effect to all its parts." *Premier Farm Credit*, 155 P.3d at 513.

■■ In enacting section 38–35–109(3), the General Assembly intended to curb the filing of invalid liens or other encumbrances against real property. *People v. Marston*, 772 P.2d 615, 617 (Colo.1989); *accord People v. Forgey*, 770 P.2d 781, 784 (Colo.1989); *see Page v. Fees–Krey, Inc.*, 617 P.2d 1188, 1192–93 (Colo.1980) ("Recording acts have been enacted in response to a need to provide protection for purchasers of real property against the risk of prior secret conveyances by the seller."). Essentially, the General Assembly sought to "promote creation of an accessible history of title." *See Page*, 617 P.2d at 1193.

■■ The trial court's finding that the affidavits "unjustifiably clouded title"—*i.e.*, were "otherwise invalid"—because Brown failed to obtain a court decree expressly establishing an easement prior to filing them is based on a misapprehension of the law. Contrary to the trial court's reasoning, prescriptive easements are not created through judicial declaration, but rather arise when a party's actions meet the requirements discussed above. *See Lobato*, 71 P.3d at 950. Thus, a party may lawfully record a document putting others on notice of a prescriptive easement over another's property regardless whether a court has yet recognized the existence of that easement.

In support of its conclusion that the affidavits should not have been recorded in the absence of a court order recognizing the

easement, the trial court reasoned that the affidavits were "not appropriate to be filed in the real estate records" because they did not "have meaning in and of themselves," but only "discuss[ ] or contain[ ] evidence concerning rights or interests in real property." However, subsection (1) of section 38–35–109 lists a broad range of documents falling within the scope of the statute, including "[a]ll deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property." The affidavits constitute instruments in writing encumbering or affecting title because they purport to show the existence of an easement encumbering the Tipton Ranch.

We reject the notion that such an instrument must take the form of a conveyance to fall within the scope of the statute. The statute distinguishes between documents which convey an interest in real property and others which may encumber or affect title to real property. And, the phrase "instruments in writing" should be construed broadly to effectuate the purpose of the statute to curb the filing of documents that invalidly cloud title. Further, section 38–41–103, C.R.S. 2008, expressly contemplates that documents other than those purporting to convey an interest in real property may be evidence of adverse possession which may be found in the records of a county clerk and recorder.

■ The trial court also erred as a matter of law in finding that the affidavits are groundless because they encumber all the Shawcrofts' property, "not just the 80 acres the two-track crossed." If Brown acquired an easement over the Tipton two-track, it would burden the entire, contiguous 320–acre parcel, not merely a portion of it, absent a subdivision of the parcel or a sale of a portion thereof (of which there is no evidence). Though the Shawcrofts contend that the affidavits hypothetically cloud title on any other property they may own in Conejos County, no evidence was presented that they own any other property in the county, and they do not contend that they actually own any other property in the county.

■ Thus, the affidavits are instruments encumbering or affecting title to real property within the meaning of section 38–35–

109(1), (3). Nonetheless, Brown's act of recording the affidavits, which clouded the Shawcrofts' title, did not in of itself constitute a violation of section 38–35–109(3). The statute only prohibits, as relevant here, the recording of documents that the person knows or has reason to know are forged, are groundless, contain a material misstatement or false claim, or are otherwise invalid. § 38–35–109(3); *see Forgey,* 770 P.2d at 784. As discussed above, the trial court found that Brown did not know or have reason to know that the affidavits contained material misstatements, and we have concluded that the trial court's findings that Brown should have known the affidavits are "groundless" or "otherwise invalid" were based on misapprehensions of the law.

In sum, we conclude that Brown did not violate section 38–35–109(3). Therefore, we reverse the trial court's judgment against Brown on the counterclaim, as well as the trial court's awards of damages and attorney fees under that statute.

## IV. Attorney Fees Under C.R.C.P. 11 and Section 13–17–102

■ Last, we address the Shawcrofts' contention that the trial court erred in denying their motions for attorney fees under C.R.C.P. 11 and section 13–17–102. Specifically, the Shawcrofts contend that because the complaint contained two inaccurate statements, the trial court should have sanctioned Brown. We disagree.

■ We will not reverse a trial court's determination regarding whether an award of attorney fees is warranted under C.R.C.P. 11 or section 13–17–102 absent a showing of an abuse of discretion. *Remote Switch Systems, Inc. v. Delangis,* 126 P.3d 269, 275 (Colo.App.2005); *E–470 Pub. Highway Auth. v. Jagow,* 30 P.3d 798, 805 (Colo.App.2001), *aff'd,* 49 P.3d 1151 (Colo.2002).

While the trial court agreed with the Shawcrofts that the complaint inaccurately described the Tipton two-track as being twenty feet wide and erroneously stated there was no other means of access to the Ortega Ranch, the trial court concluded that Brown did not act unreasonably in relying on

his realtor, Steffens, to verify the complaint. We perceive no abuse of discretion on the trial court's part in refusing to sanction Brown. *Cf. City of Aurora ex rel. Utility Enterprise v. Colorado State Engineer,* 105 P.3d 595, 618–19 (Colo.2005) (trial court abused its discretion in awarding attorney fees under section 13–17–102 where party reasonably relied on conclusions of an expert witness); *Jensen v. Matthews–Price,* 845 P.2d 542 (Colo.App.1992) (trial court abused its discretion in imposing sanctions under C.R.C.P. 11 where attorney relied on witness's statements in a deposition).

The portion of the judgment against Brown on the Shawcrofts' counterclaim under section 38–35–109 is reversed, the portion of the judgment for Brown on his prescriptive easement claim is vacated, and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

Judge BERNARD and Judge PLANK * concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.