2014 COA 5

**MARALEX RESOURCES, INC.,**
a Colorado corporation,
Plaintiff–Appellant,

v.

**Georgia CHAMBERLAIN, Public Trustee**
of Garfield County, Defendant,

and

**Nona Jean Powell, f/k/a Nona Jean**
**Withers, Defendant–Appellee.**

Court of Appeals No. 12CA2575

Colorado Court of Appeals,
Div. IV.

Announced January 2, 2014

Abadie & Schill, P.C., Lon W. Abadie, William E. Zimsky, Durango, Colorado, for Plaintiff–Appellant.

Dufford, Waldeck, Milburn & Krohn, L.L.P., Nathan A. Keever, Matthew A. Montgomery, Grand Junction, Colorado, for Defendant–Appellee.

Opinion by JUDGE DUNN

¶1 In this quiet title action, plaintiff, Maralex Resources, Inc., appeals the trial court's judgment in favor of defendant, Nona Jean Powell. We affirm.

## I. Background

¶2 Since 1996, Maralex has been the lessee under oil and gas leases issued by the United States. Under the leases, Maralex operates and maintains various oil and gas wells located on land owned by the federal government. To access the wells, Maralex and its predecessors in interest have historically traversed two roads located on what is now Powell's property, which is adjacent to the federal land.

¶3 After issues arose between Maralex and Powell regarding access to the roads on Powell's property, Maralex filed an action seeking a declaration that it is the owner, by prescription, of access easements across Powell's property. Maralex also sought a decree quieting title for its continued use of the easements.

¶4 After a bench trial, the court concluded that Maralex lacked standing to assert a prescriptive easement claim. In doing so, the court relied on common law landlord-tenant principles to conclude that (1) a tenant lacks standing to quiet title to an affirmative easement appurtenant to the fee, and (2) an easement annexed to a leasehold but independent of the fee interest is not a recognized form of property.

¶5 Despite concluding that it lacked jurisdiction over Maralex's claims, the trial court nevertheless considered and resolved the merits of the suit "to promote judicial economy and to avoid multiple appeals." In a detailed order, the court found that Maralex's use of the roads was permissive, and not adverse.[1] Thus, it found that Maralex did not establish the existence of the asserted prescriptive easements.

## II. Appellate Jurisdiction

¶6 Maralex's original appeal was dismissed for lack of a final appealable judgment. The trial court then certified its findings of fact, conclusions of law, and order under C.R.C.P. 54(b). The parties agree, as do we, that the trial court's certified order is a final appealable judgment. It constitutes both a final ruling on an entire claim for relief and an ultimate disposition on Maralex's claims against Powell. *Kisselman v. Am. Family Mut. Ins. Co.,* 292 P.3d 964, 969 (Colo.App.2011). Accordingly, the appeal is properly before us.

## III. Standing

¶7 Maralex contends that the trial court erred in concluding that it lacked standing. We agree.

¶8 Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit. *See Batterman v. Wells Fargo Ag Credit Corp.,*

---

1. We conclude that, in reaching the merits of Maralex's claims, the trial court necessarily assumed, in the alternative, that Maralex had standing.

802 P.2d 1112, 1118 (Colo.App.1990). It is also a question of law which we review de novo. *Ainscough v. Owens,* 90 P.3d 851, 856 (Colo.2004).

¶ 9 Parties in Colorado "benefit from a relatively broad definition of standing." *Id.* at 855. To demonstrate standing, a plaintiff must prove an injury-in-fact to a legally protected interest. *Id.* "[A] legally protected interest may be tangible or intangible. It may rest in property, arise out of contract, lie in tort, or be conferred by statute." *Barber v. Ritter,* 196 P.3d 238, 246 (Colo.2008) (citation omitted); *see also Ainscough,* 90 P.3d at 855; *Wimberly v. Ettenberg,* 194 Colo. 163, 166, 570 P.2d 535, 537 (1977). Thus, legally protected interests include property interests. *Barber,* 196 P.3d at 246.

¶ 10 There is no serious dispute that Maralex will suffer some injury if it is unable to cross Powell's property to access its oil and gas wells. The question, rather, is whether that injury is to a legally protected interest. Maralex argues that, as a mineral interest lessee, it has a legally cognizable interest in real property and therefore has standing to maintain an action. Powell disagrees and, relying on English landlord-tenant common law, argues that Maralex is not a fee holder and therefore has no standing to assert a claim of prescriptive easement over her land.

¶ 11 Because of the unique nature and purposes of oil and gas leases, we do not agree that common law landlord-tenant principles apply to determine whether an oil and gas lessee has standing to maintain a prescriptive easement claim. We therefore conclude that the trial court erred in determining that Maralex lacked standing to maintain an action for a prescriptive easement based on landlord-tenant law.

¶ 12 The "fundamental purpose of an oil and gas lease is to provide for the exploration, development, production, and operation of the property for the mutual benefit of the lessor and lessee." *Davis v. Cramer,* 808 P.2d 358, 360 (Colo.1991). Oil and gas lessees are granted the right and have a duty to explore for, and remove, minerals from the lessor's land. *See Garman v. Conoco, Inc.,* 886 P.2d 652, 659 (Colo.1994) ("In Colorado we have recognized four implied covenants in oil and gas leases: to drill; to develop after discovery of oil and gas in paying quantities; to operate diligently and prudently; and to protect leased premises against drainage."); *Keller Cattle Co. v. Allison,* 55 P.3d 257, 262 (Colo.App.2002) ("The prime characteristic of a mineral interest is the right to enter the land to explore, drill, produce, and otherwise carry on mining activities."). That is, an oil and gas lessee can—and is indeed expected to—plunder minerals from the lessor's property.

¶ 13 Given the distinctive relationship between a mineral estate lessor and lessee, courts routinely reject the view that traditional landlord-tenant rules apply to oil and gas leases. *See, e.g., Ark. La. Gas Co. v. Evans,* 232 Ark. 495, 338 S.W.2d 666, 669 (1960) ("A mineral lessee is unquestionably more in the position of a purchaser than ... that of a mere occupant of the land. By our law an oil and gas lease conveys to the lessee an interest in the land."); *Bolack v. Hedges,* 56 N.M. 92, 240 P.2d 844, 845 (1952) ("An oil lease does not create the ordinary relation of landlord and tenant."); *see also* 2 Eugene Kuntz, *A Treatise on the Law of Oil and Gas* § 18.2, at 6 (1989 & 2009 Supp.) ("The instrument is called an oil and gas *lease,* but the word "lease" should not be taken as a technical term which carries with it all of the law relating to landlord and tenant. Except in Louisiana, ... and with the exception of a questionable [bankruptcy] case, it is uniformly recognized that an oil and gas lease does not give rise to the ordinary relationship of landlord and tenant and that the rules applicable to ordinary tenancies do not necessarily apply.").

¶ 14 Instead, in recognition of the unique rights granted an oil and gas lessee, it is more common to find interests in oil and gas leases characterized as interests in real property. *See Keller Cattle Co.,* 55 P.3d at 262 ("[A] mineral interest ... is the property interest created in oil and gas after a severance by mineral deed or by oil and gas lease. The duration of a mineral interest is like that of common law estates, namely, in fee simple,

in fee simple determinable, for life, or for a fixed term of years."); *Coral Prod. Corp. v. Cent. Res., Inc.*, 273 Neb. 379, 730 N.W.2d 357, 368 (2007) ("[A]n interest in an oil and gas lease is an interest in real property to the extent that it grants the lessee the right to remove minerals from the land."); *Bolack*, 240 P.2d at 845 (concluding oil lease conveys an interest in real property); *see also Carroll v. Holliman*, 336 F.2d 425, 430 (10th Cir. 1964) ("It is well settled in Texas that oil and gas leases are real property interests."); *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 460 (Tex.1998) ("[An oil and gas] lease conveys a fee simple determinable with the possibility of reverter. When the lessor owns all the mineral estate ... and executes an oil and gas lease, the lessor has conveyed all the mineral estate ... but has retained a possibility of reverter in the entire mineral estate.").

¶ 15 The Colorado Supreme Court has also recognized that "the majority rule in western states appears to favor interpretation of the lessee's interest in the oil and gas lease as an interest in real estate." *Hagood v. Heckers*, 182 Colo. 337, 347, 513 P.2d 208, 214 (1973). In *Hagood*, the court considered whether, for the purpose of determining state income tax, overriding royalty interests in oil and gas leases are interests in real estate. In concluding that they are, the court acknowledged that those states that recognize a lessee's interest in an oil and gas lease as an interest in real property also characterize an overriding royalty interest as an interest in real estate. Approving this rationale, the court concluded "[w]e think this is the better rule and adopt it as the law of Colorado." *Id.* at 348, 513 P.2d at 214; *see also City of Northglenn v. Grynberg*, 846 P.2d 175, 182 (Colo.1993) (recognizing, in the context of an inverse condemnation proceeding, that the drilling of a hole by a surface owner was a physical invasion of the mineral lessee's "real property"). Accordingly, as implicitly accepted in *Hagood*, we conclude that an oil and gas lessee has an interest in real property.

¶ 16 Given the ample authority characterizing an oil and gas lease as an interest in real property, we necessarily reject Powell's as-sertion that such a holding creates a "novel" form of property interest. Indeed, it would be more novel to consider an oil and gas lessee's interest under common law landlord-tenant principles—a view which is, at best, in the minority. *See* Kuntz, § 18.2, at 6.

¶ 17 Nor are we persuaded that granting Maralex standing to pursue a prescriptive easement claim will raise the concerns recognized by our supreme court in *Coquina Oil Corp. v. Harry Kourlis Ranch*, 643 P.2d 519, 522 (Colo.1982). *Coquina* considered whether an oil and gas lessee of federally owned lands had a sufficient property interest to maintain a condemnation action, not whether such a lessee had a sufficient property interest to assert a prescriptive easement. *Id.* Further, *Coquina* recognized that the power to condemn private property is in derogation of the right to own and keep property. *Id.* It accordingly narrowly construed whether an exception to the constitutional condemnation power existed. *Id. Coquina* is thus inapposite.

■ ¶ 18 In sum, we conclude that an oil and gas lessee has a legally protected property interest in the mineral estate covered by the leases. Thus, the trial court erred in finding Maralex did not have standing to maintain its prescriptive easement claim.

## IV. Prescriptive Easements

¶ 19 Having concluded that Maralex has standing to maintain its prescriptive easement claim, we next consider the trial court's finding that Maralex did not establish a prescriptive easement across Powell's property. We agree with the trial court.

■ ¶ 20 A party acquires a prescriptive easement when the prescriptive use is (1) open or notorious; (2) continuous without effective interruption for a period of at least eighteen years; and (3) either adverse or pursuant to an attempted but ineffective grant. *Matoush v. Lovingood*, 177 P.3d 1262, 1270 (Colo.2008); *Brown v. Faatz*, 197 P.3d 245, 249 (Colo.App.2008). The parties do not dispute that Maralex and its predecessors openly and continuously used the roads on Powell's property for the statutory peri-

od.[2] The dispute centers on whether the use was adverse or permissive.

## A. Permissive and Adverse Use

¶ 21 "The use of a roadway for the statutory period, if unexplained, is presumed to be under a claim or assertion of right, and therefore adverse." *Brown*, 197 P.3d at 250. However, use is not adverse if a landowner permits the use. *See, e.g., Horne v. Hopper*, 72 Colo. 434, 438, 211 P. 665, 666 (1922) (a landowner "is not shorn of any of his rights" by permitting another to pass over his land (internal quotation marks omitted)); *see also Brown*, 197 P.3d at 250. And use that is permissive at its inception cannot ripen into a prescriptive right.[3] *See Horne*, 72 Colo. at 437–39, 211 P. at 666. Evidence of permissive use therefore defeats the acquisition of a prescriptive easement. *Brown*, 197 P.3d at 250. Whether use is adverse or permissive is a question of fact, and, as such, is within the province of the fact finder. *Id.* at 249. We will not disturb a trial court's determination of this issue if the court's findings are supported by competent evidence in the record. *Id.*

¶ 22 Where a gate is erected across a private road, any use of the road is presumed to be permissive. *E.g., Brown*, 197 P.3d at 249–50; *see also McIntyre v. Bd. of Cnty. Comm'rs*, 86 P.3d 402, 412 (Colo.2004) ("By constructing a gate across a road, a landowner conveys the clear message that any public use of that road is with the landowner's permission only; and the public's use is not adverse."). This is true even if the gate is unlocked. *Lang v. Jones*, 191 Colo. 313, 314–15, 552 P.2d 497, 499 (1976). The existence of a gate, however, is not irrefutable evidence that use is permissive because a gate "may be erected for purposes other than obstruction of public travel." *Bd. of Cnty.*

*Comm'rs v. Flickinger*, 687 P.2d 975, 981 (Colo.1984).

¶ 23 Nor is the fact that keys are provided to users of a gated road conclusive evidence of permissive use. *See Brown*, 197 P.3d at 251. Giving someone a key to a locked gate may indicate that the landowner permits the user to access the road or it may indicate the landowner recognizes a user's right to use the road. *Id.* That is, depending upon the circumstances, evidence that a person has a key to a locked gate may be inconclusive as to whether the use is permissive. *Id.*; *see* Restatement (Third) of the Law of Property: Servitudes § 2.16 cmt. *g* (2000).

## B. Use of Powell's Roads

¶ 24 Evidence was presented regarding the use of Powell's roads dating back to the late 1970s. At that time, the Powell property was owned by Tipperary Oil & Gas Corporation, a predecessor in interest to Maralex's oil and gas leases.

¶ 25 In 1979, Tipperary assigned the leases to American Resources Management Corporation. William Barnard, who, at that time grazed cattle on the Powell property, testified that Mr. Tipperary instructed him to "facilitate" the oil and gas companies' access to the roads on the property "because [Tipperary] wanted them to make money so they could continue to pay [Tipperary]." He further testified that Mr. Tipperary had "made a sweet deal with [American Resources]" and "[did not] want that deal to go south." Barnard also testified that Mr. Tipperary told him not to "let [the oil and gas companies] ruin your cattle operation or do any damage to the land." And he expressly testified that he "had the right to shut [American Resources] down," and, on at least one occasion,

---

2. Though Maralex itself did not use the roads for the statutorily prescribed period, Powell does not dispute that Maralex could "tack" the use of its predecessor lessees based on a theory of privity. *See Trueblood v. Pierce*, 116 Colo. 221, 231, 179 P.2d 671, 676–77 (1947) (permitting parties to tack their possession to that of their predecessors).

3. There is an exception to the general rule that permissive use cannot ripen into prescriptive use: "adversity is not required when a grant [of an easement] has been imperfectly attempted." *Lobato v. Taylor*, 71 P.3d 938, 954 (Colo.2002). Because Maralex argues this exception for the first time in its reply brief, we do not consider it. *Flagstaff Enters. Constr. Inc. v. Snow*, 908 P.2d 1183, 1185 (Colo.App.1995) (issues not presented in an opening brief are generally not considered).

threatened to revoke permission to use the roads.

¶ 26 With respect to the gates across the roads, Barnard testified that the gates were unlocked before 1979 and the roads were "open to the public." But in 1979, some of Barnard's cows were killed, so Barnard began locking the gates, in part, "to keep people out." At Mr. Tipperary's behest, Barnard gave the oil and gas companies keys to the gates, and they replicated the keys as needed.

¶ 27 Tipperary sold the Powell property in 1989 and evidence was presented that later owners of the property changed the locks and controlled who received keys to the gates. Specifically, testimony of one witness established that, in 1993, the then owners of the ranch controlled the oil and gas lessee's access to one of its wells. After a dispute arose, the owners insisted on an agreement whereby the operator would finish drilling by a certain date or be monetarily liable. And testimony regarding ownership of the ranch after 1996 established that the next landowner controlled "who would be given [a] key" to the gates.

¶ 28 Finally, testimony established that when Powell's husband acquired the property in 1999, Maralex only had a key to one of the two gates. And by that time, the locks on the gates were "registered locks," meaning that only ranch personnel listed at the lock and key store could get replacement keys.

¶ 29 However, evidence was also presented supporting Maralex's position, including some of Barnard's testimony. Specifically, Barnard testified that, during his tenure on the ranch, the oil and gas companies "had a right" and did not need his permission to use the roads. Evidence was also presented that Maralex performed maintenance on the roads and gates, at times went around the locked gates, and, on at least one occasion, cut a lock and installed its own lock on one of the gates.

¶ 30 After hearing the evidence, the trial court found that Maralex's use of the two roads on Powell's property was permissive, not adverse. In so finding, the trial court considered that Maralex and its predecessors had been given keys to the locked gates on Powell's property and concluded:

> By giving someone a key, it seems to the Court that the only reasonable interpretation is that "I want to keep people out, but not you. You have permission to use my road. Here is a key."

¶ 31 The trial court further found that when the locks were later changed, Maralex was given a combination to the new lock and the "the use remained permissive."

■ ¶ 32 Maralex contends that the trial court erred as matter of law by holding that giving someone a key to a locked gate conclusively establishes that the use is permissive and not adverse. Maralex accordingly argues that the trial court's judgment should be reversed. We do not agree.

¶ 33 First, we do not read the trial court's order as broadly as Maralex. In its order, the trial court correctly articulated the law and expressly recognized that "the existence of a gate does not necessarily establish that the use was permissive in all cases." Given this observation, we do not interpret the order as rejecting well-established law and creating a per se rule that the presence of a gate and the provision of a key always negates adverse use.

¶ 34 Second, the court's discussion regarding the provision of a key was not a generic statement untethered from the facts in this case. Rather, it immediately followed the trial court's recognition that one of Powell's predecessors gave Maralex keys to the locked gate to allow Maralex access to roads on Powell's property. Accordingly, we cannot conclude that the trial court misapprehended or misapplied the law.

■ ¶ 35 Maralex next asserts that the parties' conduct and statements conclusively establish that Maralex's use of the roads was adverse. But where evidence exists to rebut the presumption that the use is adverse, it is for the finder of fact to determine whether such use is adverse or permissive. *Bomareto v. Snow,* 516 P.2d 443, 444 (Colo.App.1973) (not published pursuant to C.A.R. 35(f)). And the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn from such

evidence, are all within the province of the trial court. *Id.*

¶ 36 Here, evidence was presented from which the trial court could find that Maralex's use of the roads on Powell's property was permissive. Based on the evidence, there is record support for the inference that Maralex's asserted "right" to access the roads flowed from Mr. Tipperary's permission and his instruction to allow Maralex's predecessors to use the roads. That the permission could be withdrawn if the lessees interfered with cattle operations on the property is also a reasonable inference that could be drawn from the evidence. And the evidence supports a finding that Maralex's use remained permissive as subsequent owners continued to control access to the gates and roads. *See Horne*, 72 Colo. at 437–39, 211 P. at 666.

¶ 37 The trial court was therefore faced with conflicting inferences regarding whether Maralex's use was permissive, and it resolved this question against Maralex. Maralex requests this court to reweigh the evidence and draw inferences and conclusions different from those drawn by the trial court. This we cannot do. *See, e.g., Broncucia v. McGee,* 173 Colo. 22, 25, 475 P.2d 336, 337 (1970) (the inferences and conclusions to be drawn from the evidence are within the province of the fact finder, whose decision will not be disturbed on review unless manifestly erroneous).

¶ 38 Because the trial court's finding that Maralex's use was permissive is sufficiently supported by the record, it will not be disturbed on appeal. *See Enerwest, Inc. v. Dyco Petroleum Corp.,* 716 P.2d 1130, 1132 (Colo.App.1986) (court's findings that use was permissive were supported by ample evidence and will not be disturbed on review); *Berry Patch, Inc. v. Lawrence,* 536 P.2d 830, 832 (Colo.App.1975) (not published pursuant to C.A.R. 35(f)) ("There being sufficient evidence to support the findings of the trial court on the controverted element of easement by prescription, the findings of the trial court will not be set aside.").

## V. Conclusion

¶ 39 The judgment is affirmed.

JUDGE WEBB and JUDGE BERNARD concur.