# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50939

EDWARD A. EASTERLING and JANICE EASTERLING, husband and wife, )
)
Plaintiffs-Appellants, )
)
v. )
)
JEREMIAH CLARK and AMANDA CLARK, husband and wife, )
)
Defendants-Respondents, )
)
and )
)
HAL PACIFIC PROPERTIES, LP, and its successors in interest, )
)
Defendant. )

**Boise, August 2024 Term**

**Opinion filed: August 19, 2025**

Melanie Gagnepain, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Michael J. Whyte, District Judge.

The judgment of the district court is <u>vacated</u> and <u>remanded</u>.

Hall Angel & Associates, LLP, Idaho Falls, for Appellants. Cory Stegelmeier argued.

Pickens Law, P.A., Boise, for Respondents. Terri R. Pickens argued.

_____

MOELLER, Justice.

This is the second appeal concerning Edward and Janice Easterling's ("the Easterlings") efforts to secure an easement by necessity to their landlocked parcel. In the first appeal, this Court overturned the district court's decision that rejected a statute-of-limitations defense to the Easterlings' common-law easement by necessity claim. In a 3-2 decision, we concluded that the four-year statute of limitations contained in Idaho Code section 5-224 applied to easement-by-necessity claims. *Easterling v. HAL Pac. Props., L.P.* (*Easterling I*), 171 Idaho 500, 513, 522 P.3d

1

1258, 1271 (2023). However, the Court determined that issues of fact remained concerning when the accrual date for the statute of limitations began and whether it extinguished the Easterlings' claim. Accordingly, the case was remanded with instructions for the district court to "determine when, if ever, the Easterlings (or their predecessors-in-interest) knew, or reasonably should have known, of a claim by another 'adverse to' the Northern, Southern, and/or Eastern Parcels' right to an easement by necessity when merged or otherwise." *Id*. at 520, 522 P.3d at 1278.

On remand, the district court concluded that the statute of limitations accrued in 2004; thus, any claim for an easement by necessity was extinguished by 2008. Thus, the district court granted summary judgment to Jeremiah and Amanda Clark ("the Clarks"), the successors in interest to HAL Pacific Properties ("HAL").[1] The Easterlings timely appealed, asserting three grounds for reversal: (1) the defendants waived their statute-of-limitations defense by failing to raise it pursuant to Rule 8(c) of the Idaho Rules of Civil Procedure; (2) the district court erred in awarding summary judgment to the defendants; and (3) this Court should overrule its previous decision in *Easterling I* "to clear up the confusing and inconsistent positions taken by the majority in that decision." For the reasons set forth below, we depart from our holding in *Easterling I* and vacate the district court's entry of summary judgment in favor of the Clarks.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are the same as those previously articulated in *Easterling I* and are incorporated by reference. *See Easterling I*, 171 Idaho at 504–07, 522 P.3d at 1262–65. Only a brief summary of the most salient facts is included below.

The Easterlings own three contiguous and landlocked parcels of real property in Ammon, Idaho, identified as the Southern Parcel, Eastern Parcel, and Northern Parcel. The Easterlings' three parcels are landlocked and inaccessible by public road. There are subdivisions to the north and to the west of the Easterlings' property and a railroad track and a canal directly to the east. HAL owned the parcel of land directly to the south of the Easterlings' land ("HAL Property"). The HAL Property borders an arterial road—Sunnyside Road.

In 2017, as part of their estate planning, the Easterlings decided to sell their three parcels. They approached HAL to purchase an easement so that a buyer would have deeded access. After

---

[1] In the interim between appeals, the Clarks purchased the HAL Parcel and filed a motion to substitute as the real parties in interest, which the district court granted on November 28, 2022. The Clarks have apparently adopted the arguments previously asserted by HAL. Therefore, to avoid confusion when discussing the arguments raised in *Easterling I* and in this appeal, we will continue to refer to the defendants in this action as "HAL."

2

failing repeatedly in their negotiations with HAL for an easement, the Easterlings brought an action to claim an easement by necessity over HAL's property to access their abutting parcels. The Easterlings filed their complaint in the district court on February 15, 2018. HAL asserted multiple affirmative defenses in its answer—including the doctrines of laches, waiver, and unclean hands—but never cited to a statute of limitations.

After the district court granted summary judgment to the Easterlings, HAL appealed to this Court arguing the district court erred by concluding the Easterlings had an easement by necessity and in setting the width of the easement at 26 feet. In *Easterling I*, a majority of this Court determined that the four-year statute of limitations in Idaho Code section 5-224 applied to easement by necessity claims. *Id.* at 510–11, 522 P.3d at 1268–69. This Court reversed the district court's decision granting summary judgment to the Easterlings, but remanded for further determination of "when the landlocked owner—or any of the predecessors-in-interest—knew, or reasonably should have known, that another made a claim 'adverse to' the parcel's right to an easement by necessity." *Id.* at 510, 522 P.3d at 1268 (emphasis omitted).

Following the remand in *Easterling I*, HAL conveyed its interests in property to Clarks, who were substituted as defendants in the case. The Clarks moved for summary judgment, again asserting a statute-of-limitations defense and claiming an accrual date of 2004. The Easterlings raised three arguments against the Clarks' motion. They contended that (1) the Clarks should be equitably estopped from arguing the statute of limitations; (2) HAL failed to properly plead an affirmative defense in its first responsive pleading pursuant to Idaho Rule of Civil Procedure 8(c); and (3) there are disputed material facts over when or whether HAL asserted a claim "adverse to" the Easterlings.

The district court rejected each argument. It first determined that the elements of equitable estoppel were absent and that HAL's affirmative defense was timely pleaded. The court next concluded that the pertinent facts of the case established through Edward Easterling's testimony that "he knew he was landlocked in 2004, and that he did nothing with his property because he could not use it for anything because he had no access." Thus, "the statute of limitations for [the Easterlings'] claim for [an] easement by necessity began running no later than 2004." Based on these conclusions, the district court granted summary judgment to the Clarks and the case was dismissed with prejudice. The Easterlings timely appealed.

## II. STANDARDS OF REVIEW

When we review a trial court's ruling on a motion for summary judgment, we apply the same standard used by the trial court originally ruling on the motion. *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017) (citation omitted). Pursuant to the Idaho Rules of Civil Procedure, a court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *Krinitt*, 162 Idaho at 428–29, 398 P.3d at 161–62 (citation omitted). We also exercise free review over legal issues related to statutes of limitation. *McCabe v. Craven*, 145 Idaho 954, 957, 188 P.3d 896, 899 (2008).

## III. ANALYSIS

This appeal not only asks us to determine whether the district court properly followed the guidance given by the divided Court in *Easterling I*, it also invites us to revisit our earlier ruling and adopt the approach suggested by the dissent. *Easterling v. HAL Pac. Props., L.P.*, 171 Idaho 500, 521–26, 522 P.3d 1258, 1279–84 (2023) (Moeller, J., dissenting). It is worth noting that the path from *Easterling I* to what is now "*Easterling II*" has been a circuitous one. The opinion in *Easterling I* was authored by a pro tem justice whose view commanded a 3-2 majority. After rehearing was granted, an amended opinion was issued over 13 months later. Now, almost two years later, this same matter has returned to us in a new appeal with new issues. Yet, we are also confronted with some of the same thorny issues the Court faced before—this time with a new justice on the bench. Fully acknowledging these unusual circumstances, we once again wade into the same legal quagmire.

### A. HAL was not barred from raising the statute of limitations as a defense pursuant to Idaho Rule of Civil Procedure 8(c).

Before reaching the merits, we must briefly address a procedural issue. The Easterlings first argue that HAL failed to properly raise the affirmative defense of Idaho Code section 5-224 in its answer to the complaint, as required by Rule 8(c) of the Idaho Rules of Civil Procedure. "We exercise free review over questions regarding the application of procedural rules." *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Rule 8(c) requires a party to "affirmatively state any avoidance or affirmative defense" when "responding to a pleading," which includes any applicable statute of limitations. I.R.C.P. 8(c). "The purpose of the rule is to alert the parties to the issues of fact which will be tried and to afford them an opportunity to present evidence to meet

4

those defenses." *Kenworth Sales Co. v. Skinner Trucking, Inc.*, 165 Idaho 938, 943, 454 P.3d 580, 585 (2019). If not properly raised, affirmative defenses may be waived. *Dep't of Env't Quality v. Gibson*, 166 Idaho 424, 437, 461 P.3d 706, 719 (2020).

However, this Court has repeatedly held that an affirmative defense may be raised before trial, such as in a motion for summary judgment. *See Gibson*, 166 Idaho at 438–39, 461 P.3d at 720–21; *Patterson v. State, Dep't of Health & Welfare*, 151 Idaho 310, 316, 256 P.3d 718, 724 (2011); *Fuhriman v. State, Dep't of Transp.*, 143 Idaho 800, 804, 153 P.3d 480, 484 (2007); *Bluestone v. Mathewson*, 103 Idaho 453, 455, 649 P.2d 1209, 1211 (1982). "[A] party does not waive an affirmative defense for failing to raise it in the initial answer, so long as it is raised before trial and the opposing party has time to respond in briefing and oral argument." *Patterson*, 151 Idaho at 316, 256 P.3d at 724. For example, in both *Patterson* and *Fuhriman*, this Court concluded that a party's failure to raise its affirmative defense prior to a motion for summary judgment was not fatal to that defense. *Id.*; *Fuhriman*, 143 Idaho at 804, 153 P.3d at 484. In each case, the party asserted an affirmative defense in its memorandum accompanying the motion for summary judgment. *Patterson*, 151 Idaho at 316, 256 P.3d at 724; *Fuhriman*, 143 Idaho at 804, 153 P.3d at 484. The opposing party then responded to the issue in their opposition memorandum as well as in oral argument before the lower court. *Patterson*, 151 Idaho at 316, 256 P.3d at 724; *Fuhriman*, 143 Idaho at 804, 153 P.3d at 484. This Court determined that those circumstances were sufficient for Rule 8(c) *Patterson*, 151 Idaho at 316, 256 P.3d at 724; *Fuhriman*, 143 Idaho at 804, 153 P.3d at 484. Likewise, the failure to raise the affirmative defense in initial responsive pleadings did not constitute a waiver of that defense under Rules 8(c) and 9(h). *See Gibson*, 166 Idaho at 439–40, 461 P.3d at 721–22 (holding that the district court did not commit error when it considered Gibson's statute-of-repose defense that was raised the eve of trial). *See also Fuhriman*, 143 Idaho at 804, 153 P.3d at 484 (holding that an affirmative defense may be raised for the first time on a motion for summary judgment). Similarly, a plaintiff is not required to plead around an unpleaded affirmative defense. *Fulfer v. Sorrento Lactalis, Inc.*, 171 Idaho 296, 303, 520 P.3d 708, 715 (2022).

As in *Patterson* and *Fuhriman*, HAL first raised a statute-of-limitations argument in its summary judgment memoranda, alerting the Easterlings to those issues of fact and law, allowing them time to respond in both briefing and oral arguments. Indeed, the Easterlings addressed section 5-204 in their briefing and section 5-224 at oral argument on the summary judgment motion,

arguing that Idaho's common law and public policy considerations prevented application of *any* statute of limitations to easements by necessity. This statute-of-limitations argument became the key question on appeal and the deciding factor of both the district court's and this Court's final decisions.

For these reasons, we conclude that HAL's statute-of-limitation defense was properly raised for the first time on summary judgment, notwithstanding HAL's failure to assert it in their initial pleadings. Therefore, we affirm the district court.

## B. Neither res judicata nor the "law of the case" doctrine preclude us from revisiting our decision in *Easterling I.*

The Easterlings ask this Court to revisit the *Easterling I* decision in this appeal because "there are a number of contradictions and inconsistencies" that make the opinion "manifestly wrong" and warrant reversal. More specifically, the Easterlings argue that *Easterling I* was incorrectly decided because the majority (1) "disregarded past decisions regarding easements by necessity" and incorrectly applied a statute-of-limitations defense to an easement-by-necessity claim; (2) incorrectly stated that a right to an easement by necessity only arises at severance; and (3) incorrectly held that the legislature "clearly intended to apply Idaho Code section 5-224 to easement by necessity cases." In response, the Clarks contend that the Easterlings are precluded from raising this argument under res judicata or the "law of the case" doctrine. Before addressing the correctness of our holding in *Easterling I*, we must address the Clarks' concerns first.

### 1. Res judicata is not applicable here.

Res judicata encompasses "both claim preclusion (true res judicata) and issue preclusion (collateral estoppel)." *Elsaesser v. Riverside Farms, Inc.*, 170 Idaho 502, 508, 513 P.3d 438, 444 (2022) (quoting *Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007)). "Claim preclusion bars a subsequent action between the same parties upon the same claim or upon claims relating to the same cause of action." *Berkshire, Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012) (internal quotation marks omitted) (citation omitted). A claim preclusion defense has three elements:

> Under this doctrine, a claim is also precluded if it could have been brought in the previous action, regardless of whether it was actually brought, where: (1) the original action ended in final judgment on the merits, (2) the present claim involves the same parties as the original transaction, and (3) the present claim arises out of the same transaction or series of transactions as the original action.

6

*Id*. Claim preclusion is inapposite here because the case before us is still *the* "original action." As the case is currently postured, it has yet to reach a final judgment on the merits. Since final judgment not been entered, the Easterlings' request that we re-evaluate our *Easterling I* decision is not barred by claim preclusion.

Similarly, issue preclusion (or collateral estoppel) protects litigants from having to relitigate an identical issue in a subsequent action. *Ticor Title Co.*, 144 Idaho at 123, 157 P.3d at 617 (2007). Issue preclusion is a five-element test and bars the relitigation of an adjudicated issue when:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id*. As with claim preclusion, issue preclusion does not bar us from reconsidering our *Easterling I* decision because there is no "prior litigation" or "final judgment on the merits" as required by the fourth element. In fact, this is the *same* litigation and the outcome is still *unresolved*. Given the procedural posture of this case, neither claim nor issue preclusion inhibits us from re-evaluating whether the Easterlings' easement by necessity claims are subject to the four-year statute of limitations in Idaho Code section 5-224.

> 2. *The law of the case doctrine, under the circumstances present here, is discretionary and does not prevent us from revisiting our holding in* Easterling I.

The law of the case doctrine is long-established in Idaho. It provides that if "the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal." *Suitts v. First Sec. Bank of Idaho*, 110 Idaho 15, 21–22, 713 P.2d 1374, 1380–81 (1985) (alteration omitted) (quoting *Fiscus v. Beartooth Elec. Coop., Inc.*, 591 P.2d 196, 197–98 (Mont. 1979)).

In *Hall v. Blackman* (*Hall II*), 9 Idaho 555, 75 P. 608 (1904), the Idaho Supreme Court first considered the question of whether the law of the case doctrine bars this Court from reconsidering its own ruling in a subsequent appeal following remand. Similar to the case at hand, *Hall II* involved a second appeal of the same matter following a remand issued in the first appeal: *Hall v. Blackman* (*Hall I*), 8 Idaho 272, 68 P. 19 (1902). In *Hall II*, the appellants, notwithstanding failing

in their prior petition for rehearing filed in *Hall I*, raised "*the identical questions*" in their second appeal. *See Hall II*, 9 Idaho at 557, 75 P. at 608. We held that, regardless of the correctness of the conclusions reached in *Hall I*, judgment cannot now be disturbed by considering questions that have already become final following a complete adjudication of the case. *Id.* at 558–59, 75 P. at 609. The Court in *Hall II* explained:

> There must necessarily be an end to litigation in any given case, but that object can never be obtained if an appellate court can re-examine upon subsequent appeals the same questions which it has previously examined, and the fact that it may have made a mistake or committed an error will not warrant a re-examination and reconsideration upon another appeal in the same case. The court is at liberty, in a *separate and independent case*, to depart from any rule or principle which it may have announced that it afterward determines unsound or unwise to follow, but the conclusion reached becomes final and the law of the case in which it is announced.

*Id.* at 560, 75 P. at 609. While we wholeheartedly agree with the general sentiment that at some point all litigation must come to an end, any reliance on *Hall II* in this matter is misplaced on several fronts.

First, there have been significant developments over the last 120 years in law-of-the-case jurisprudence since our opinion in *Hall II*. More recent caselaw suggests that the decision whether to apply this doctrine to an appellate court's own prior decision is discretionary but should be employed sparingly. For example, shortly after *Hall II* was decided, the United States Supreme Court held in *Messenger v. Anderson*,

> [i]n the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.

225 U.S. 436, 444 (1912) (citations omitted). More recently, the Supreme Court reaffirmed this principle, noting that the "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983), quoted with approval in *Stuart v. State*, 136 Idaho 490, 495, 36 P.3d 1278, 1283 (2001). In 1988, the Supreme Court reiterated this principle:

> [a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Christianson v. Cold Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona*, 460 U.S. at 618 n.8).

Second, the facts in *Hall II* are distinguishable from the case at bar. In *Hall II*, on remand from *Hall I*, and years after a jury had originally reached a verdict, the appellants attempted to introduce *new evidence*. This far exceeded the scope of the decision in *Hall I*, which declined to order a new trial and remanded the case "with instructions to modify the findings of fact and judgment in accordance with *the views expressed in this opinion*." *Hall I*, 8 Idaho at 289, 68 P. at 24. (emphasis added).

In the Easterlings' case, unlike *Hall II*, the key issue presented is not a factual question but a legal one—the applicability of the statute of limitations. This issue was originally resolved on summary judgment in the Easterlings' favor by the trial court. The bench trial that followed focused on two narrow issues: (1) whether the Easterlings' Northern Parcel was entitled to an easement by necessity, and (2) the appropriate width of the easement. Following trial, these matters were also resolved in the Easterlings' favor. The reasons for the reversal and remand in *Easterling I* were based primarily on questions of law—not the facts of the case. It was remanded for further consideration of the facts under a different legal standard. Now, on appeal, the Easterlings are not asking us to revisit any factual questions; rather, we are asked to consider whether our original opinion was correct as a matter of law.

This is different from *Hall II*, where a reversal in *Hall II* would have required this Court to set aside the results of a jury trial held years earlier based on additional evidence not presented in the first trial. However, in this case, there is no reason to remand for a new trial if the trial court originally decided the matter correctly *under the proper legal standard*. Thus, unlike in *Hall II*, the Easterlings are not attempting to relitigate this matter; they are merely asking for the result in the original trial to be restored.

Third, if a majority of this Court as now constituted were to agree that its prior ruling in *Easterling I* was wrongly decided in the earlier appeal, it makes little sense to continue to apply an erroneous precedent. Applying the law of the case doctrine in this matter would require us to knowingly allow an incorrect precedent to remain on the books and potentially mislead countless parties, attorneys, and judges in future cases until someone has the wherewithal to bring an appeal that would allow us to address this mistake of law. Just as a wise rancher will seek to mend his fences before his cattle escape, it is prudent for judicial officers to get the law right while a matter is still pending before them. As the Court of last resort in Idaho, we are not compelled, when considering an appeal of the same pending case, to suffer an earlier mistake of law to stand

9

uncorrected as we wait hopefully for a future court to deliver us from our own error. It seems the wiser course, especially given the protracted history of this case, for us to employ our discretion to ensure that the matter is properly and finally decided.

Finally, we recognize that the law of the case doctrine differs from *stare decisis*. As we have recently noted, "stare decisis provides that today's Court should stand by yesterday's decisions." *Planned Parenthood Great Nw. v. State*, 172 Idaho 321, 326, 532 P.3d 801, 806 (2022) (internal quotation marks omitted) (quoting *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015)). We further acknowledge that this Court follows "controlling precedent unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *State v. Godwin*, 164 Idaho 903, 920, 436 P.3d 1252, 1269 (2019) (alteration omitted) (quoting *State v. Dana*, 137 Idaho 6, 9, 43 P.3d 765, 768 (2002)). However, this is not a case where we are being asked to overrule a precedent by *subsequent* parties in a *subsequent* case; rather, the *same* parties (or their successors) that litigated *Easterling I* have returned in an appeal of the *same* case but with *different* underlying issues.

For these reasons, we hold that neither res judicata, nor the law of the case doctrine, nor principles of stare decisis, bar this Court from correcting a legal error we made in an earlier appeal of the same matter. Nevertheless, we emphasize that, while this ability is discretionary, it should only be applied judiciously in cases where there has not been a full adjudication of the merits under a proper legal standard. Thus, this is not an invitation to open the floodgates for unlimited appeals of fully decided cases. Contrary to the dissent's view that this case has been conclusively adjudicated numerous times, the very fact that this case is once again before us—on appeal from a summary judgment ruling—establishes that this matter has not been fully adjudicated. Inasmuch as this matter is still mired at the summary judgment stage, we conclude that the most practical and judicious course moving forward is to decide this matter under the proper legal standard. Having concluded that we will, under the unique circumstance of this case, reconsider the statute-of-limitations issue from *Easterling I*, we now turn to the parties' arguments in this appeal on that issue.

**C. The district court *in Easterling I* correctly concluded that the four-year statute of limitations set forth in Idaho Code section 5-224 is inapplicable to an easement by necessity claim.**

HAL contends the district court erred by holding the Easterlings' claims seeking an easement by necessity were not barred by a statute of limitations. HAL narrows its argument on appeal to assert that the Easterlings' claims are barred by the "catch-all" statute-of-limitations provision under Idaho Code section 5-224. We disagree with HAL's arguments because a statute-of-limitations defense is inapplicable to an easement by necessity claim due to its very nature.

Idaho Code section 5-224 sets forth a general statute of limitations for all actions not specifically listed in chapter two, title five of the Idaho Code. It states, "[a]n action for relief not hereinbefore provided for must be commenced within four (4) years after the cause of action shall have accrued." I.C. § 5-224. As the district court noted, there is no specific statute of limitations applicable to a claim of easement by necessity. Nor has any appellate opinion— prior to this Court in *Easterling I*—ever applied Idaho Code section 5-224 to an easement by necessity claim. Consequently, as noted in *Easterling I*, this appeal presents a question of first impression for this Court.

Idaho courts have long determined that easement by necessity claims are anchored in the public policy of preventing lands from being rendered unfit for occupancy or cultivation. *Burley Brick & Sand Co. v. Cofer*, 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981) (citation omitted). "An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009) (quoting *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 301, 127 P.3d 196, 204 (2005)). An easement by necessity arises and is *implied* at the conveyance of a tract of land that is landlocked and inaccessible via public road in favor of the grantee. *See Burley Brick*, 102 Idaho at 335, 629 P.2d at 1168. This Court has explained:

> A way of necessity arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway.

11

*Id.* (quoting *Martino v. Fleenor*, 365 P.2d 247, 249 (1961)). In other words, "a way of necessity does not rest on a pre-existing use but on the need for a way across the granted or reserved premises." *Id.* (quoting *Martino*, 365 P.2d at 249).

As noted, "Idaho public policy favors the full use of lands . . . ." *Backman*, 147 Idaho at 394, 210 P.3d at 79. "An easement by necessity is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation." *Id.* at 395, 210 P.3d at 80 (alterations omitted) (quoting *Burley Brick*, 102 Idaho at 335, 629 P.2d at 1168). HAL's argument here to apply Idaho Code section 5-224 to bar the Easterlings' claims would render their lands useless and thereby violate Idaho's public policy to allow the full use of lands. Thus, this case has resulted in the apparent collision of two competing public policy considerations: (1) the statute of limitations, which bars stale claims, and (2) the easement by necessity doctrine, which promotes the full use of lands. The weight of legal authority suggests that the former must bend to the latter. HAL's argument that we must apply Idaho Code section 5-224 to bar a claim asserting rights the Easterlings have shown arose decades ago would render their lands useless and thereby violate Idaho's public policy to allow the full use of lands. Additionally, for reasons explained below, it would be inconsistent with the common law principles from which easements by necessity were derived. We decline this invitation to abandon these principles and disturb the firm foundations of our property law by applying a statute of limitations in a manner antithetical to its purpose.

Across other jurisdictions, an easement by necessity exists for the duration it is needed. Thus, as long as the necessity continues to exist, an action may be brought to formally claim a right of access. *See, e.g.*, *Carroll v. Carroll*, 355 S.W.3d 463, 468 (Ky. Ct. App. 2011). The Restatement (Third) of Property provides, "Although the necessity must exist at the time of severance, *there is no time limit on when the easement may be claimed*." Restatement (Third) of Property (Servitudes) § 2.15 (2000) (emphasis added). This principle is further elucidated in *The Law of Easements & Licenses in Land*:

> When the necessity is ongoing, the easement may lie dormant for many years and through changes in ownership of the dominant estate. A subsequent owner of the dominant tenement may activate the easement long after the circumstances calling for its implication arose. Thus, *one who asserts a dormant easement of necessity cannot be thwarted by a statute of limitations* or the defense of laches. A contrary approach would inhibit the owner of landlocked property from making productive use of the land merely because the owner had allowed the property to lie fallow for

some period following the transaction that rendered it landlocked or because, after severance, the owner initially had some form of permissive access to the property that subsequently was revoked.

Jon W. Bruce et al., *The Law of Easements & Licenses in Land* § 4:12 (2021) (emphasis added).

Courts in sister jurisdictions confronting a statute-of-limitations defense to an easement by necessity have followed this same approach. For example, in *Hinrichs v. Melton*, the plaintiff owned two contiguous parcels of land and sold the southern parcel to the defendants in 1999. 218 Cal. Rptr. 3d 13, 16 (Cal. Ct. App. 2017). This left the plaintiff's remaining parcel landlocked. *Id.* Many years later, plaintiff brought an action against the owners of three neighboring parcels, in order to establish an easement to plaintiff's parcel. *Id.* The trial court granted the plaintiff an easement by necessity over defendants' parcels. *Id.* at 17. On appeal, the defendants asserted that if plaintiff ever had an easement by necessity over one defendant's parcel, it was extinguished by the five-year statute of limitations on quiet title actions. *Id.* at 23. The court rejected the defendants' arguments and held that the statute of limitations did not apply to an easement by necessity claim because "[a]n easement by necessity cannot be extinguished as long as the necessity exists." *Id.*

In *Canali v. Satre*, the plaintiff's predecessor in interest owned five adjoining parcels of land (A, B, C, D, and E). 688 N.E.2d 351, 352 (Ill. Ct. App. 1997). Parcels A, B, and C were conveyed to other owners between 1931 and 1936. *Id.* In late 1936, the plaintiff's predecessor in interest conveyed parcel D and retained parcel E. *Id.* The parties agreed that when parcel D was conveyed, parcel E became landlocked. *Id.* The plaintiff purchased the landlocked parcel E from the bankruptcy court and parcel D from defendant. *Id.* Parcel D contains a driveway. *Id.* The plaintiff brought suit against defendants claiming he had acquired an "easement of necessity by implication" to the driveway on parcel D in order to access his parcel E. *Id.* The trial court granted defendants' motion for summary judgment to quiet title, stating that plaintiff "must take it as he found it, with or without access." *Id.* at 352–53.

On appeal, the defendants in *Canali* asserted that plaintiff's claim was barred by the statute of limitations. *Id.* at 354. Like in this case, the statute of limitations asserted by the defendants in *Canali* was Illinois' general statute of limitations on claims to real estate. *See* 735 Ill. Comp. Stat. Ann. 5/13-118 (West 2021).[2] It provided in part:

> No action based upon any claim arising or existing more than 40 years before the commencement of such action shall be maintained in any court to recover any real

---

[2] Although we recognize *Canali* was decided in 1997, the statute at issue has not been amended since 1983.

estate in this State or to recover or establish any interest therein or claim thereto, against the holder of the record title to such real estate when such holder of the record title and his or her grantors immediate or remote are shown by the record to have held chain of title to such real estate for at least 40 years before the action is commenced . . . .

*Id.* Despite the extremely long 40-year statute of limitations—ten times longer than Idaho's catch-all provision—the court rejected defendants' assertion. *Canali*, 688 N.E.2d at 354. The court reasoned,

> While the time of severance is important to establish the presumption that the grantee and grantor did not intend to render the land unfit for occupancy, the interest in the easement did not arise until its use became necessary. *See Finn v. Williams*, 376 Ill. 95, 99, 33 N.E.2d 226 (1941) (the easement by necessity may lie dormant through several transfers of title, yet pass with each transfer as appurtenant to the dominant estate and be exercised at any time by the titleholder). To find otherwise would frustrate the purpose of an easement by necessity, which is to put land to its highest and best use.

*Id.* The court reversed the district court's order granting summary judgment to the defendants and entered summary judgment for the plaintiff. *Id.*

Other courts have reached the same conclusion when a statute of limitations is asserted as a defense to an easement by necessity. *E.g.*, *Attaway v. Davis*, 707 S.W.2d 302, 303 (Ark. 1986) ("A way of necessity having been created by implication for the benefit of the grantee of the dominant estate or his successors thereafter, it cannot be extinguished so long as the necessity continues to exist." (citation omitted)); *Carroll*, 355 S.W.3d at 468 ("[S]o long as the necessity exists, an action may be maintained to establish a right of access."); *William C. Haak Tr. v. Wilusz*, 949 N.E.2d 833, 837 (Ind. Ct. App. 2011) ("[T]he right to an easement of necessity does not expire or attach itself to a particular owner; there is no statute of limitations on easement of necessity and the right to one does not expire upon transfer of either the dominant or servient estates."). *See also* 101 Cause of Action 2d 610 (2025) ("Claims of easement by necessity are not subject to a statute of limitations."). We further note that other persuasive authority has been critical of the approach taken by the majority in *Easterling I*.[3]

---

[3] This Court's decision in *Easterling I* has generated discussion and criticism in academic and real estate circles. *See, e.g.*, Jerald A. Long, *Respectfully, I Dissent: Easterling v. Hal Pac Properties, L.P. and making a Mess of Idaho Real Property Law*, 2 Idaho L. Rev., no. 1, art. 3, at 1 (2023); *see also Easements: Necessity Claim is Subject to Statute of Limitations*, 52-MAR Real Est. L. Rep. NL 2 (Mar. 2023) (summarizing *Easterling I* for real-property practitioners and calling it a "dubious decision"); *Easements: Statute of Limitations Applied to Block Easement by Necessity*, 51-FEB Real Est. L. Rep. NL 4 (Feb. 2022) (noting *Easterling I* is "an apparently unique decision").

Here, the district court in *Easterling I* astutely noted that a statute-of-limitations defense should give way to the important public policy to use Idaho's lands to its fullest:

> [W]here an easement by necessity is . . . based on public policy, a statute of limitations should not be used to thwart that public policy. . . . [T]his action is not a claim to create a right that didn't already exist, but rather is an action to judicially recognize an easement that came into effect at the time of the severance. There was no need to seek a judicial declaration of an easement until [the Easterlings] decided to put their property to a use for which a legally recognized easement was required.
>
> . . . Otherwise, the untenable result would be to have property landlocked and without access which, for all intents and purposes, would render the property useless.

We agree with the district court's persuasive analysis and note that substantial authority and common law principles commend this approach. If a statute of limitations were applied to bar the Easterlings' claim, it would render their lands useless. There is no other access point to ingress and egress their parcels. Such a holding would contradict Idaho's clear public policy regarding land. One can only imagine the confusion and disruption section 5-224 would create for landowners across the state if it were suddenly applicable to every parcel currently benefitting by a long-standing easement by necessity that has not yet been judicially recognized. Such a disruption in our property law is wholly unnecessary if the true nature of the doctrine being assailed is fully understood.

Undoubtedly, Idaho's "catch all" statute of limitations applies to actions "not hereinbefore provided" in Idaho's limitation of actions. I.C. § 5-224. However, section 5-224 was never meant to "catch" an action seeking declaration of a right that, by its very nature, "may lie dormant for years and through changes in ownership of the dominant estate." The Law of Easement & Licenses in Land § 4:12. Indeed, *no* statutes of limitations are meant to apply to easements by necessity because "[a]n easement by necessity cannot be extinguished as long as the necessity exists." *Hinrichs*, 218 Cal. Rptr. 3d at 23. As in other jurisdictions, Idaho upholds the common law principle that an easement by necessity arises and is implied at the time of severance of the property. *Burley Brick & Sand Co. v. Cofer*, 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981). *See also* 101 Cause of Action 2d 610 § 18 (2025) ("An easement by necessity exists from the time it is created by severance and necessity, irrespective of whether it is actually used. As long as the necessity remains, the easement exists… and an easement by necessity need not be exercised to remain valid.").

15

Conceptually, it is important to recognize that an action seeking recognition of an easement by necessity, such as the Easterlings' claims, is not actually seeking to bring about a change in the status of the property because an easement by necessity is implied and arises *at the time of severance* of the property. The bringing of a declaratory action is merely the method by which courts judicially recognize and affirm the existence of the easement in order to clarify and enforce the respective rights of the interested parties. Thus, the doctrine of easement by necessity, as correctly applied in this case by the district court in *Easterling I*, merely recognizes that the Easterlings and their predecessors have possessed an implied easement to their property since the time of severance. A statute of limitations would simply have no bearing on such an action.

For these reasons, today we hold that Idaho Code section 5-224 is inapplicable to a claim of an easement by necessity. An easement by necessity is based on the public policy of encouraging the full use of Idaho's lands. Barring such claims because they are not brought within a certain time period would significantly undermine this public policy. Having determined that HAL's statute-of-limitations defense fails, we will next turn to the arguments concerning the district court's findings on the Easterlings' easement by necessity across the parcels.

**D. The district court's original finding in *Easterling I*, that the Easterlings are entitled to an easement by necessity to access their Northern Parcel, was supported by substantial and competent evidence.**

HAL contends the district court's original findings and conclusions after the bench trial are erroneous, and that the Easterlings are not entitled to an easement by necessity to access their Northern Parcel. Specifically, HAL argues that the district court erroneously applied its prior rulings on the final two elements of an easement by necessity claim—reasonable necessity at the time of severance and great present necessity—from the Southern and Eastern Parcels to the Northern Parcel.

To establish an easement by necessity, one must show: "(1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement." *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009) (quoting *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 725, 874 P.2d 528, 536 (1994)). The second element requires "reasonable necessity" at the time of severance. *Machado v. Ryan*, 153 Idaho 212, 219, 280 P.3d 715, 722 (2012). The final element demands that the claimed easement be the only access point to the property. *Id.* at 220, 280 P.3d at 723.

16

Regarding the second element, following trial, the district court determined that the record contained no evidence that there was any *legal* access to the Northern Parcel from any public road at the time of severance. HAL argues that the district court improperly shifted the burden to HAL to show the Northern Parcel had legal access instead of maintaining the burden on the Easterlings. We find the district court did not improperly shift the burden onto HAL; rather, the district court merely commented on the status of the evidence in front of it, as the trier of fact. Indeed, the case was heard as a bench trial and both parties primarily rested on the written record in front of the district court from the previous summary judgment motion.

HAL avers that there was no aerial photograph to show the state of the Northern Parcel at the time of severance in 1914. Aerial photographs of the time period are likely rare and, in any event, unnecessary here. The record before the district court contained an aerial photograph from 1946 demonstrating that the nearest public road was Sunnyside Road. The photo discloses no other roads in the vicinity. Aside from the unfairness of requiring the Easterlings to prove a negative from over a hundred years earlier (that there was no road in 1914), there was simply no reason for the district court to infer from the record that a road existed 32 years earlier in a location where there was no evidence of a road in 1946. The more reasonable inference is the one made by the district court: that there was no road in the vicinity in 1914 because an aerial photograph of the region taken in 1946 showed no evidence of another road. The district court's statement that HAL did not present any evidence that there was public access to the Northern Parcel did not shift the burden onto HAL; it was merely a comment on the evidence in the record. The Easterlings showed there was no legal access to the Northern Parcel, based on the earliest known aerial photos of the region, and HAL did not present any evidence to rebut that assertion.

HAL suggests that some photographs show dirt trails leading to the Northern Parcel. However, as the district court correctly noted, "[t]respass across adjacent property does not constitute legal access." The record before the district court via the Northern Parcel title search and the closest-in-time aerial view showed no public road or other access connected to the Northern Parcel. Therefore, we conclude the district court's determination that there was reasonable necessity for an easement to the Northern Parcel at the time of severance was supported by substantial and competent evidence.

Finally, the district court determined that at the time of trial, the Easterlings' claimed easement across and upon the HAL Property would be the *only* access point to the Northern Parcel.

17

Akin to HAL's argument regarding the Southern and Eastern parcels discussed below, HAL asserts the claimed easement is not the *only* access point because of (1) the possibility of renegotiating the railroad access, and (2) HAL's offer to sell the Easterlings an easement. Again, we disagree with HAL's assertion: the Easterlings should not be forced to purchase an easement when the law provides one. The Easterlings' claimed easement is the only available legal ingress and egress to their Northern Parcel. There is no other legal option. Therefore, we find the district court's determination that there is great present necessity for the easement is supported by substantial and competent evidence.

### E. The district court did not err in *Easterling I* by granting the Easterlings' motion for summary judgment as to the Southern Parcel and the Eastern Parcel.

HAL contends the district court erred by granting the Easterlings an easement by necessity for their Southern and Eastern Parcels in *Easterling I*. The district court initially only granted the Easterlings' motion for summary judgment regarding their Southern Parcel; however, on reconsideration, it later granted summary judgment regarding their Eastern Parcel as well. "This Court reviews a district court's decision on a motion for reconsideration using the same standard of review the lower court used when deciding the motion." *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 229, 494 P.3d 769, 777 (2021) (citing *Monitor Finance, L.C. v. Wildlife Ridge Ests., LLC*, 164 Idaho 555, 559–60, 433 P.3d 183, 187–88 (2019)). "[S]ummary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Moyer v. Doug Lasher Constr., Inc.*, 174 Idaho 967, ___, 560 P.3d 1114, 1120 (alteration in original) (quoting *Pocatello Hosp., LLC v. Quail Ridge Med. Inv., LLC*, 157 Idaho 732, 737–38, 339 P.3d 1136, 1141–42 (2014)). Contrary to HAL's assertions, because the Easterlings' motion for reconsideration was premised on the same legal theories as their motion for summary judgment, the district court was correct in utilizing a summary judgment standard for both. *See Monitor Finance, L.C.*, 164 Idaho 555, 433 P.3d 183.

While a district court is afforded broad discretion to consider additional evidence with a motion for reconsideration that " 'bear[s] on the correctness of the order,' this rule was not designed to allow parties to bypass timing rules or fail to conduct due diligence prior to a court's ruling. Rather, '[t]he purpose of a motion for reconsideration is to reexamine the correctness of an order.' " *Ciccarello v. Davies*, 166 Idaho 153, 162, 456 P.3d 519, 528 (2019) (quoting *Int'l Real Est. Sols., Inc. v. Arave*, 157 Idaho 816, 819, 340 P.3d 465, 468 (2014)). The district court

determined that what was deficient in the Easterlings' first motion for summary judgment was the record establishing unity of title between the small Eastern Parcel and the HAL Property. These facts were not novel: the chain of title search supplemented the record with facts consistent with the Easterlings' original complaint and their theory of the case. Otherwise, the district court determined that its rationale used for the Southern Parcel similarly applied to the Eastern Parcel without further analysis. We conclude that this decision by the district court was proper.

Once again, to succeed on an easement by necessity claim, one must prove: " '(1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement.' " *Backman*, 147 Idaho at 394, 210 P.3d at 79 (quoting *Bear Island Water Ass'n, Inc.*, 125 Idaho at 725, 874 P.2d at 536). On appeal, HAL does not contest the first element—that the Easterlings' parcels and HAL's parcel originally had unity of title prior to separation. The Easterlings assert that HAL did not preserve any issue regarding the final two elements of an easement by necessity claim because HAL did not make any such argument in response to the Easterlings' motion for reconsideration. We disagree. HAL clearly opposed those elements in response to the Easterlings' motion for summary judgment; thus, the issues were adequately preserved for review at reconsideration and, now, on appeal.

To satisfy the second element—necessity of the easement at the time of severance—one must show "reasonable necessity." *Machado*, 153 Idaho at 219, 280 P.3d at 722; *see also MacCaskill v. Ebbert*, 112 Idaho 1115, 1120, 739 P.2d 414, 419 (1987). "Reasonable necessity is 'something less than' great present necessity." *Machado*, 153 Idaho at 219, 280 P.3d at 722 (quoting *Beach Later Water Users Ass'n v. Harrison*, 142 Idaho 600, 605, 130 P.3d 1138, 1143 (2006)). "[O]ne seeking an easement need not show that a legally available route is *absolutely* impossible to use." *MacCaskill*, 112 Idaho at 1120, 739 P.2d at 419. An easement by necessity may be reasonably necessary even if the property is not landlocked. *Machado*, 153 Idaho at 219, 280 P.3d at 722. "[A]n easement by necessity should be granted only if the difficulty or expense of using the legally available route is so great that it renders the parcel unfit for its reasonably anticipated use." *MacCaskill*, 112 Idaho at 1120, 739 P.2d at 419.

We conclude that there was reasonable necessity for an easement at the time the Easterlings' Southern and Eastern Parcels were severed from the HAL Property. HAL limits its argument to the fact that the Easterlings, and their predecessors, could have used the railroad's

19

right-of-way to access their parcels. This temporary "right-of-way" access using the railroad was merely a permissive use, not a deeded or recorded easement. Moreover, the permission was revoked by the railroad in 1999. When the Easterlings' Southern and Eastern Parcels were severed from the HAL Property, an easement was reasonably necessary to access their property; indeed, there was no other legal way to access those parcels. Examining the facts in the light most favorable to HAL, there is nothing in the record to dispute that the Easterlings had a reasonable need for an easement *at the time of severance*. Therefore, the district court did not err by finding that the Easterlings met their burden of proof on the second element.

In order to establish the third element—great present necessity—one must show that "the claimed easement is the *only* access to the claimant's property." *Machado*, 153 Idaho at 220, 280 P.3d at 723. "[A]n easement implied by necessity 'must not be granted if there is an alternate access, though it be expensive or inconvenient,' because the expense or inconvenience of an alternate access is insufficient to demonstrate great present necessity." *Id.* (quoting *Bob Daniels & Sons v. Weaver*, 106 Idaho 535, 542, 681 P.2d 1010, 1017 (Ct. App. 1984)).

Regarding the final element, HAL argues that there is not great present necessity because an alternate option exists, even though it is expensive. HAL has offered to sell the Easterlings an easement across the HAL Property. Although this argument may initially appear reasonable, upon closer scrutiny it is immaterial. The whole point of an easement by necessity is that it already belongs to the claimant; the Easterlings should not have to purchase back from the servient estate what they already have. It would be akin to allowing a defendant in a wrongful conversion case to prevail by offering to sell the converted property back to the rightful owner. If we were to hold that the Easterlings are required to purchase an easement from HAL, merely because it is willing to sell, this would undermine the entire rationale behind the easement by necessity doctrine. Every easement by necessity claim could be easily defeated if claimants are required to purchase an easement from the servient estate, at whatever cost the servient estate desires.

In a similar vein, HAL asserts that the Easterlings can negotiate with the railroad to reinstate the "right-of-way" access. Even if this were possible, it is not required under the doctrine of easement by necessity. When a dominant estate and servient estate are severed from each other, it is presumed that there is an easement by necessity across the *servient* estate:

> It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his

lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway.

*Burley Brick & Sand Co. v. Cofer*, 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981) (quoting *Martino v. Fleenor*, 365 P.2d 247, 249 (Colo. 1961)). This is no different than HAL's previous argument in which he claims the Easterlings are required to purchase an easement from it. Only here HAL is requiring they purchase an easement from a third party. Because the Easterlings have no easement rights over any other contiguous land, there is great present necessity for them to cross HAL's property, as it is the only existing access point. Therefore, we conclude that the district court in *Easterling I* did not err in finding that the Easterlings have met their burden of proof on the third element; therefore, they are entitled to a declaration that they possess an easement by necessity across and upon the HAL Property for their Southern and Eastern Parcels.

### F. The district court erred by determining the easement's location.

HAL next argues that the district court erred by ordering that the easement be located at the western edge of the HAL Property because the Easterlings' original motion for summary judgment and their motion for reconsideration made no such argument or request. HAL asserts it did not have proper notice and an opportunity to properly oppose the request through argument and evidence. HAL's contention is accurate. The Easterlings did not address the location of the easement in either their original motion for summary judgment or in their initial brief on their motion for reconsideration. In fact, it was HAL in its response to the Easterlings' motion for reconsideration that pointed out that the district court should deny the Easterlings' motion because they failed to assert *where* the easement should be placed. In response, the Easterlings conceded in their reply brief that they had not designated a location for the easement but offered that they "are willing to stipulate to whatever location [HAL] would like to place the easement."

We conclude that the issue of the location of the easement was not properly before the district court at the time the court decided the issue in response to the Easterlings' motion for reconsideration. Therefore, it was error for the district court to reach that issue without full notice and an opportunity to respond. In the Easterlings' original motion for summary judgment, they did not move the district court to determine the location of the easement. It was also not raised on their motion for reconsideration. "The purpose of a motion for reconsideration is to reexamine the correctness of an order." *Arave*, 157 Idaho at 819 340 P.3d at 468. A motion for reconsideration is "not designed to allow parties to bypass timing rules or fail to conduct due diligence prior to a court's ruling." *Ciccarello*, 166 Idaho at 156, 456 P.3d at 528.

21

Simply put, the district court cannot *reconsider* what it never considered in the first place. The Easterlings should have raised the issue of the location of the claimed easement in their original motion for summary judgment; or, alternatively, they should have filed a subsequent motion for summary judgment or addressed the issue at trial. This would have afforded HAL the proper notice and opportunity to adequately respond to the issue. By bootstrapping this new argument onto their motion for reconsideration via a reply brief, HAL was not afforded a full opportunity to address the issue. Because the location of the easement was an issue not properly before the district court when it was decided, and HAL did not have an adequate notice or opportunity to respond to it, the district court's determination of the location of the easement is reversed. Remand is appropriate for proper determination of this issue.[4]

### G. The district court did not err when it set the easement's width at 26 feet.

Following trial, the district court set the width for the easement at 26 feet. In reaching this conclusion, the district court relied on evidence submitted by Banda—the deputy chief of the Ammon Fire Department. Banda explicitly testified that the Easterlings could not obtain any sort of building permit if the easement was less than 26 feet wide. This is because the City of Ammon's current fire code requires "drive aisles" to be wide enough for emergency vehicles to access. HAL did not dispute this evidence. Instead, HAL maintains that the easement should be only 10 to 12 feet in width, consistent with the dirt tracks and its historical use. While we agree that the historic record may indicate a 10-to-12-foot easement is consistent with past use, we hold as a matter of first impression that an easement by necessity may be widened when it is necessary and reasonable to the needs of the dominant estate so long as it does not unreasonably encumber the servient estate owners' beneficial enjoyment of their property.

"Once a court determines that an easement exists, it 'must also set forth the width and location of the easement.' " *Machado*, 153 Idaho at 221, 280 P.3d at 724 (quoting *Argosy Tr. ex rel. Andrews v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005)). A district court's determination of the width of an easement is a question of fact that will not be disturbed on appeal if it is supported by substantial and competent evidence. *Turner v. Cold Springs Canyon Ltd. P'ship*, 143 Idaho 227, 229, 141 P.3d 1096, 1098 (2006).

---

[4] We recognize that the Easterlings' apparent willingness to stipulate to any location HAL suggested for the easement, coupled with HAL's refusal to designate a location, likely influenced the district court's actions to decide the issue as it did. When properly brought before the court on remand, it is likely that further litigation and expenses can be minimized, as the Easterlings suggested on appeal.

Over 70 years ago, this Court recognized that "[a]n instrument granting an easement is to be construed in connection with the intention of the parties and circumstances in existence at the time the easement was given and carried out." *Quinn v. Stone*, 75 Idaho 243, 250, 270 P.2d 825, 829–30 (1954). This standard has subsequently been applied to determine the width of both express and certain implied easements. *See Argosy Tr.*, 141 Idaho 570, 114 P.3d 128 (express easement); *Nw. Pipeline Corp. v. Luna*, 149 Idaho 772, 241 P.3d 945 (2010) (express easement); *Peterson v. Gentillon*, 154 Idaho 184, 296 P.3d 390 (2013) (express easement); *Ruddy-Lamarca v. Dalton Gardens Irrigation Dist.*, 153 Idaho 754, 291 P.3d 437 (2012) (express easement and secondary easement); and *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 127 P.3d 196 (2005) (express easement and easement implied by prior use). Then, in *Machado*, this Court applied this standard for the first time to establish the width of an easement by necessity. 153 Idaho at 221, 280 P.3d at 724.

In *Machado*, the servient estate owner, Machado, filed a complaint to quiet title and for declaratory relief. *Id.* at 217, 280 P.3d at 720. Ryan answered and counter-claimed under several theories, including a claim that he had an easement implied by necessity across Machado's property. *Id.* Jones, another landowner at issue, was permitted to intervene, and likewise requested the court recognize an easement by necessity across Machado's property. *Id.* The district court found that Jones, but not Ryan, had met the elements to establish an easement by necessity and granted Jones an easement to his property via Shamrock Lane. *Id.* The district court went on to determine the width of the easement. *Id.* While there was some testimony that Shamrock Lane was only six to eight feet wide when it was originally built, there was other testimony that Shamrock Lane was twelve to fourteen feet wide in 1972. *Id.* at 221, 280 P.3d at 724. Ultimately, the district court set the easement width to be fourteen feet. *See id.* On appeal, Machado contested this width determination, but this Court affirmed. *Id.* The Court noted that despite the conflicting testimony presented, it gave due regard to the district court's appraisal of witness credibility; therefore, there was substantial and competent evidence finding the easement to be fourteen feet wide. *Id.*

HAL contends that *Machado* is binding on the present circumstances, requiring the district court to order an easement no wider than 12 feet given the historic photographic evidence submitted. We disagree. In *Machado*, Jones made no request to modify the easement beyond the width of its historical use. Nor was there any evidence indicating Jones could not make beneficial use of his property with only a fourteen-foot easement. This is distinguishable from the

Easterlings' case, where they have requested an easement broader than the historical use, but necessary to be able to presently put their land to beneficial use. This was not an issue in *Machado*, where there were no facts indicating the width of the easement otherwise affected the usability of Jones' property. Thus, whether an easement by necessity, once established, can be widened based on necessity is an issue of first impression before this Court.

When presented with this question, several jurisdictions have concluded that it is permissible to widen an easement when it is reasonably necessary to the dominant estate and does not unreasonably interfere with the servient estate owner's use of their property. *See Palmer v. R.A. Yancey Lumber Corp.*, 803 S.E.2d 742, 751–52 (Va. 2017); *Beck v. Mangels*, 640 A.2d 236, 250 (Md. Ct. Spec. App. 1994) (holding that the "scope of ingress/egress ways of necessity may reasonably increase with the dominant estate's necessary and reasonable needs as those needs exist, present and future"); *see also Morrell v. Rice*, 622 A.2d 1156, 1160 (Me. 1993); *Keene v. Jackson*, 732 So.2d 1138, 1140 (Fla. Dist. Ct. App. 1999*)*; *William C. Haak Tr. v. Wilusz*, 949 N.E.2d 833, 838 (Ind. Ct. App. 2011); *Stroda v. Joice Holdings*, 207 P.3d 223, 230–31 (Kan. 2009); *Griffeth v. Eid*, 573 N.W.2d 829, 834 (N.D. 1998); *Soltis v. Miller*, 282 A.2d 369, 370–71 (Pa. 1971); *Traders, Inc. v. Bartholomew*, 459 A.2d 974, 980 (Vt. 1983); *Richards v. Land Star Grp., Inc.*, 593 N.W.2d 103, 108 (Wis. Ct. App. 1999). We agree with the approach taken in these jurisdictions and rule that the width of an existing easement by necessity may be expanded provided that the modification for the beneficial enjoyment of the dominant estate does not create unreasonable burdens on the servient estate.

To prohibit the expansion of an easement by necessity is contrary to common law principles governing easements by necessity. As prudently stated by the Supreme Court of Virginia, to implement a rule which "freeze[s] the parameters of an easement by necessity to those that existed at the time of its inception" would be antithetical to the purpose of easements by necessity. *Palmer*, 803 S.E.2d at 749. In *Burley Brick and Sand Co. v. Cofer*, this Court recognized that:

> A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound public policy that *lands should not be rendered unfit for occupancy or successful cultivation*. Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys *whatever is necessary for the beneficial use of that property* and retains whatever is necessary for the beneficial use of land he still possesses.

24

102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981) (emphasis added) (quoting *Martino v. Fleenor*, 365 P.2d 247, 249 (Colo. 1961)). In accordance with these common-law principles, Idaho has long favored the full use of lands. *Backman v. Lawrence*, 147 Idaho 390, 394–95, 210 P.3d 75, 79–80 (2009). Were we to rule today that the Easterlings cannot seek an expansion of their easement, we would be disregarding this "sound public policy" in favor of an inflexible rule that renders certain lands useless, notwithstanding the recognition of an implied easement. Indeed, there is substantial and competent evidence in the record that absent at least a 26-foot-wide access road, the Easterlings will be unable to obtain any sort of building permit for their property. Thus, we reject a rigid approach in favor of a balanced one that encourages the full use of both the dominant estate and the servient estate owner's lands.

If this Court agreed with HAL, the evidence presented below shows that the Easterlings could not obtain a building permit to construct any sort of structure. This flies in the face of Idaho's clear public policy on lands. *See id.* On this point, the district court aptly concluded:

> Given the zoning restrictions for the Easterlings' property, if this [c]ourt were to grant only a 10-foot wide easement, consistent with HAL's argument, the Easterlings would not be able to build anything and the land would almost certainly lay idle and empty. To recognize an easement by necessity and then preclude the landowners from building on the property would be unreasonable, inconsistent with the purpose of the easement, and contrary to Idaho's public policy favoring a beneficial use.

Accordingly, we conclude that the district court did not err by setting the width of the easement at 26 feet. This allowed the recognition of an easement implied by necessity to be efficacious in that it would allow the Easterlings to make beneficial use of their land, while avoiding any unnecessary impairment of HAL's enjoyment of its property.[5]

**H. The Easterlings are entitled to costs on appeal, but not attorney fees.**

Both sides request costs on appeal under Idaho Rule of Civil Procedure 54 and Idaho Appellate Rule 40. We find the Easterlings are the prevailing party on appeal. The Easterlings successfully defended the original favorable ruling below as to the easement to all three of their

---

[5] HAL alternatively argues that if this Court affirms the easement by necessity, this Court should remand the case for proper factual findings regarding the width of the easement. The district court made the factual finding regarding the width of the easement *after* the bench trial. Before trial, the district court clarified that the issues to be resolved at trial were whether the Northern Parcel was entitled to an easement by necessity and the appropriate width of the easement. HAL had an opportunity to present evidence and testimony at trial regarding the appropriate width of the easement. HAL called one witness and otherwise rested on the written record in front of the district court. No more factual findings are required.

parcels. The Easterlings also successfully defended the width determination of their easement. While they did not prevail on the location of the easement, which is remanded for further proceedings, the Easterlings have repeatedly indicated that they would have accepted any location HAL designated. Therefore, notwithstanding the remand, we conclude that the Easterlings are the "overall prevailing party on appeal." *See Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 152–53, 481 P.3d 78, 106–07 (2021). Accordingly, the Easterlings are entitled to costs under Idaho Appellate Rule 40 as a matter of course.

The Easterlings also request attorney fees on appeal under Idaho Code section 12-121. The Easterlings assert that HAL's appeal is frivolous and simply asks this Court to second-guess the district court's findings and conclusions. Idaho Code section 12-121 provides that a court may award attorney fees when a case or an appeal is "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. This Court has held, "[a]n award of attorney fees is appropriate if the appellant simply invites the appellate court to second-guess the trial court on conflicting evidence." *Gustaves v. Gustaves*, 138 Idaho 64, 71, 57 P.3d 775, 782 (2002). Given the tortuous path this case has traveled since the original appeal in *Easterling I*, and the important issue of first impression this Court has had to decide (and redecide), we conclude that HAL's appeals were neither frivolous nor lacking in legal foundation. Moreover, HAL was successful on appeal regarding the issue of the location of the easement. Accordingly, we deny the Easterlings' request for attorney fees under Idaho Code section 12-121.

## IV.  CONCLUSION

For the reasons explained herein, we (1) vacate the district court's ruling in *Easterling II*, (2) reverse this Court's decision in *Easterling I*, and (3) affirm the original decision of the district court granting summary judgment to the Easterlings in *Easterling I*. Given these conclusions, it is unnecessary to address the other issues raised in this appeal. Accordingly, we remand for further proceedings consistent with this opinion for the sole purpose of determining the proper location of the easement. Costs on appeal are awarded to the Easterlings.

Chief Justice BEVAN and Justice MEYER concur.

BRODY, Justice, dissenting.

I dissent. While much could be written about the majority's decision to rewrite Idaho Code section 5-224 from a "catch-all" into a "catch-some" statute of limitations, there is little value in

26

rehashing the arguments since the Court's decision in *Easterling I* aptly captures the debate. *See Easterling v. HAL Pac. Props., L.P.* (*Easterling I*), 171 Idaho 500, 522 P.3d 1258 (2023). My focus today is on how the majority's decision upends the doctrine of the law of the case and our rules of appellate procedure. The Court issues a sweeping holding: "we hold that neither res judicata, the law of the case doctrine, nor principles of stare decisis, bar this Court from correcting a legal error we made in an earlier appeal of the same matter." The only limiting principle? The Court's discretion should only be used "*judiciously* in cases where there has not been a full adjudication of the merits under a proper legal standard." *Id.* There has been a full adjudication of the merits of whether Idaho Code section 5-224 applies to easement by necessity claims. Twice—first, on appeal in *Easterling I* and then on rehearing. The issue was decided under a proper legal standard; five justices simply disagreed on how to interpret the statute. Wise ranchers mend fences, but they also take care not to run post hole diggers through electric lines. I fully expect the implications of the majority's breathtakingly broad holding to reverberate through our cases—both civil and criminal—in ways we cannot possibly predict.

This is the third time this Court has been called upon to address the applicability of the statute of limitations in this case. As far as I am concerned, the matter was conclusively settled when this Court *unanimously* agreed that the Easterlings' petition for rehearing was improvidently granted and declined to reconsider the Court's decision in *Easterling I*. The Easterlings had the opportunity to litigate the statute of limitations fully before this Court, and they lost both times. Frankly, I was more than surprised when I read the Easterlings' opening brief on appeal here and discovered that half of the brief was spent arguing that the Court's decision to apply the statute of limitations in *Easterling I* should be reversed. The Court's ruling in *Easterling I* is the law of the case and governs the parties' dispute until the case is finally resolved. If it were up to me, I would award HAL Pacific Properties, LP, attorney fees pursuant to Idaho Code section 12-121 for having to respond to the Easterlings' unreasonable argument.

The majority's decision to address the applicability of the statute of limitations defense upends the law of the case doctrine as it has been articulated and applied by this Court for the past 120 years. This Court explained in 1904 that litigation must end and, if this Court continues to reexamine the same issues over and over in subsequent appeals, finality can never be achieved:

> There must necessarily be an end to litigation in any given case, but that object can never be attained if an appellate court can re-examine upon subsequent appeals the same questions which it has previously examined, and the fact that it may have

made a mistake or committed an error will not warrant a re-examination and reconsideration upon another appeal in the same case. The court is at liberty, in a *separate and independent case*, to depart from any rule or principle which it may have announced that it afterward determines unsound or unwise to follow, but the conclusion reached becomes final and the law of the case in which it is announced.

*Hall v. Blackman* (*Hall II*), 9 Idaho 555, 560, 75 P. 608, 609 (1904).

The majority attempts to distinguish the facts of *Hall II* from the situation in this case by reasoning that the statute of limitations issue presented here is a legal question, not a factual one. The majority explains that

a reversal in *Hall II* would have required this Court to set aside the results of a jury trial held years earlier based on additional evidence not presented in the first trial. However, in this case, there is no reason to remand for a new trial if the trial court originally decided the matter correctly *under the proper legal standard*. Thus, unlike in *Hall II*, the Easterlings are not attempting to relitigate this matter; they are merely asking for the result in the original trial to be restored.

Majority Op., *supra*, at 9. It is not that simple, and the distinction the majority is trying to make is one that makes no difference.

Let's go back to the first appeal in this case. The first time this case came to us, the district court had entered a memorandum decision granting summary judgment in favor of the Easterlings on their claim for easement by necessity. *Easterling I*, 171 Idaho at 508, 522 P.3d at 1266. The district court had also conducted a trial to determine the location and width of the easement. *Id*. at 508–09, 522 P.3d at 1266–67. HAL appealed the decisions, raising three issues: (1) inadequate factual basis for the district court's determination that all three of the Easterlings' parcels were entitled to an easement by necessity; (2) the location of the easement; and (3) the width of the easement. *Id*. at 509, 522 P.3d at 1267. The Court never reached these issues. Instead, the Court determined that the catch-all statute of limitations applied to a claim of easement by necessity and needed to be adjudicated. *Id*. at 510, 522 P.3d at 1268. Critically, the Court vacated the judgment entered by the district court, reversed the district court's summary judgment and bench trial decisions, and remanded the case for further proceedings. *Id*. The Easterlings filed a petition for rehearing, and it was granted. *See id.* at 526, 522 P.3d at 1284. After oral argument, the Court unanimously agreed that rehearing was improvidently granted. *Id.*

Fast forward to the current appeal. The district court adjudicated the statute of limitations defense as we directed. The district court granted summary judgment in favor of HAL, ruling that HAL properly raised the statute of limitations defense and that the undisputed facts established as

28

a matter of law that the Easterlings' claim for easement by necessity was time barred. The district court entered a final judgment dismissing the Easterlings' lawsuit. The Easterlings appealed the district court's judgment pursuant to Idaho Appellate Rule 11(a)(1), which authorizes an appeal from a final judgment. The Easterlings attached the final judgment to their notice of appeal in accordance with Idaho Appellate Rule 17(e)(1), and their appeal was deemed to include all interlocutory judgments and orders entered prior to the final judgment. I.A.R. 17(e)(1)(A). The Easterlings set forth the issues presented on appeal as follows:

> 3. Appellants intend to assert the following issues on appeal:
>
> a. Whether the district court erred when it granted summary judgment to Respondents finding that Appellants['] claim for an easement by necessity was barred by Idaho Code section 5-224;
>
> b. Whether the district court erred when it found that Respondents had properly pled [sic] the statute of limitations despite conceding that they failed to plead the affirmative defense in their answer as required by Idaho Rule of Civil Procedure 8(c).

Despite the fact that the final judgment at issue and the district court's memorandum decision granting summary judgment did not implicate the propriety of this Court's prior decision in any way, the Easterlings spent half of their opening brief on appeal arguing that this Court should reverse its prior decision. Without so much as a mention of our Rules of Appellate Procedure, the majority has elected to take up the applicability of the statute of limitations defense to "mend fences," but in doing so, has rendered our rules of procedure meaningless. The applicability of the statute of limitations was settled, and there is nothing in our rules of appellate procedure that opened the door for the Easterlings to even request that this Court reexamine that issue.

Morever, this is not a case of simply reversing course on a legal issue. The majority, through some sort of judicial prestidigitation, has also now taken up and addressed the challenges that HAL raised, but we never addressed, in its first appeal to this Court. Subsections D, E, F, and G of the Majority Opinion all reflect issues arising out of the trial court's decisions that were before the Court in *Easterling I* and have not been raised by any party in this appeal. While it is not apparent from the opinion itself, the majority literally had to reach back to the briefing and clerk's record from *Easterling I* to address these issues. And let this sink in. We actually *reversed* the district court's summary judgment and trial decisions in *Easterling I* because we determined that the district court had to adjudicate the statute of limitations defense. *Easterling I*, 171 Idaho at 520,

29

522 P.3d at 1278. It is simply inconceivable to me how the majority can now *affirm* decisions the Court *reversed* in *Easterling I*.

"Courts long have recognized that finality is fundamental to our judicial system." *Comfort v. Lynn Sch. Comm.*, 560 F.3d 22, 26 (1st Cir. 2009) (citations omitted). "The principle of finality is essential to ensure consistency and certainty in the law." *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660 (1st Cir. 1990). "Finality is an 'institutional value[] that transcend[s] the litigants' parochial interests.' " *Comfort*, 560 F.3d at 26 (alterations in original) (quoting *Oakes v. United States*, 400 F.3d 92, 97 (1st Cir. 2005)). In my view, the majority's decision to reach back and redetermine an issue we have now *twice* decided gravely undermines this basic tenet of our system and, with it, any future litigant's certainty that a decision from this Court will result in any substantive resolution rather than trap him in an endless cycle of appeals concerning issues previously resolved.

Justice ZAHN CONCURS.